## MARGARET S. McNAIR v. WILSON P. HUNT.

1. **Ejectment.** Defendant claimed under one Sarpy, who was executor of Antoine Reihle, and guardian of his children, of whom plaintiff was one; he offered, in support of his title, two documents, on file in the Spanish archives of the recorder's office at St. Louis, purporting to be the proceedings of the sale of the estate of A. Reihle, deceased, and an act of sale and adjudication of the plantation of A. Reihle, deceased, in 1802. From these documents, it appeared that Sarpy had been appointed executor testamentary of Reihle, and guardian of his children; that he had made an inventory, and applied to the Lieutenant Governor for liberty to sell the real estate; that his petition was granted by one Benito Vasques, who declared himself authorized to act judicially in the absence of the Lieut. Governor; that the land was three times offered publicly for sale, at the church door, with the customary solemnities, and sold on the eighth day after the petition was granted, by the Lieut. Governor in person, to Sarpy, the highest bidder. Held:

2. 1. That by the customs of this State, whilst governed by the Spanish laws, the Lieut. Governor had a right to authorize a deputy to discharge his judicial duties.

3. 2 It is not clear that thirty days notice were necessary to the validity of a sale by an administrator, under the Spanish laws and usages; and, even if it were so, a shorter notice would only make the proceedings voidable, and their validity could not be questioned in a collateral suit.

3. There was sufficient proof, in this document, that an inventory was made, and an appraisement was unnecessary.

4. Though the records do not show on their face, that it was proved before the Lieut. Governor that the personalty was exhausted before he ordered the sale of the real estate, yet the legal presumption is, that such was the fact, and that the judge acted in accordance with law.

5. By the laws then in force, a guardian might purchase land with permission of the judge.

6. That, finally, the plaintiff, by the laws then in existence, could, at any time within four years from this adjudication and sale, have objected to the proceedings, in the proper courts, but failing to do so, the judgment and adjudication, which, at worst is but voidable, cannot now be attacked, when offered as evidence in a collateral suit.

A possession of thirty years in a party and those claiming under him, is sufficient to authorize a jury to presume a deed.

ERROR to the circuit court of St. Louis county.

*G. A. Bird*, counsel for the plaintiff:

The plaintiff relies on the following points:

1. That the court below erred in receiving in evidence two documents, one purporting to be the proceedings of the sale of the estate of Antoine Riehle, deceased, by Gregoire Sarpy; the other, what purports to be an act of adjudication of the land in dispute to Sarpy, the executor of the will of Riehle, and guardian of his minor children, for *the purpose of showing title out of the plaintiff*, when this evidence was resisted.

2. The court erred in giving the following instruction to the jury, "that they ought to find for the defendant, unless they should be of opinion that there was fraud in the proceedings of Sarpy or those claiming under him, the record showing that there was *parol* and *documentary* evidence before the jury, but not alleging that all the evidence is set out."

In support of these positions the same reasons apply, and we shall insist that the documents objected to, ought not to have been received or the instruction given. 1. Because in a judicial sale of an estate in which minors are concerned, *nothing is to be presumed*, but all the *solemnities* required in the alienation of such estates, must appear to have been observed, or no title passes, and the sale is *ipse jure* void.

2. Under this head we insist, if the alleged sale to Sarpy is good for any thing, it can only be good for an undivided half of the premises, which, at the time of the sale, was owned by plaintiff's grand mother, whom plaintiff represents, and to the heirs of A. Riehle, plaintiff's father. Because, under a notice to sell 1400 arpens

JUNE TERM, 1838.

McNair v. Hunt.

by metes and bounds, as the property of A. Riehle, when Riehle only owned an undivided half, only his interest could pass, admitting the sale to have been in every respect regular.

3. The partition made a year after the sale to Sarpy, was void, because the heirs of Riehle were interested in the balance of the tract, and should have been made parties to the partition. The partition was made by surveyor general, who had no authority to make it, and instead of what he purchased, 700 arpens, 1,632 arpens, according to the record, were allotted to Sarpy.

4. There is no evidence on the record that plaintiff ever did, by any act, ratify the pretended sale to Sarpy, or the alleged proceedings in partition—see Chesmann's heirs v. Sadler, 10 Martin, 726, and following.

5. The defendant says that, supposing said sale void, there might have been, and probably was, sufficient evidence, parol and documentary, without that objected to, to establish the defendant's title. We insist, if there was no other evidence than what appears on the record, then the directions of the court were clearly wrong; and if there was other, then the court took upon himself to determine the law and the fact, which is error—see 1 Mo. Rep. 232, 315, 482, 505, 618; 3 Mo. R. 23; 4 Mo. R. 23, 106, 256, 356.

6. The question of prescription urged here as a bar to plaintiff's action, we insist, cannot arise or be decided in this court, because it is apparent from the record that the case below was determined by the jury, under the direction of the court; that they ought to find for defendant, unless they shall be of opinion that there was fraud in the proceeding of sale by Sarpy, or those claiming under him. To determine a case here on a point not determined or made in the court below, would be to convert this appellate court into a court of original jurisdiction, and depriving the plaintiff in this of every advantage intended to be secured by a trial by jury—see Laws of Mo. Code of 1825, sec. 49, title "Practice," pages 634–5.

7. If the question of prescription were open here, we say that, from the facts as stated on the record, prescription could not bar the plaintiff's action. If Sarpy never was a purchaser in good faith and with just title, nothing but a prescription, founded on 30 years' possession, would avail him. The admission that Sarpy's title, such as it was, was sold to Chouteau in June, 1808, and is now vested in the defendant, there is no admission that

Chouteau or defendant purchased so as to enable them to have the benefit of the 10 years' prescription. If prescription continued to run from the time plaintiff arrived of age in January, 1808, until this suit was commenced, prescription would not bar the plaintiff, because neither Sarpy nor any one claiming under them, were possessors in good faith and with just title—see Porter's opinion and the case of Reeves v. Towles, 10 Louisiana Rep.

8.   We insist that all Spanish laws, usages and customs in Missouri, were abolished by the act of January, 1816, introducing the common law of England as the rule of decision here, with some restrictions—see Geyer's Digest, title "Common Law."

*H. R. Gamble, J. Spalding, and H. S. Geyer*, counsel for defendant: ·

1.   The first point for the defendant in error is, that the plaintiff has not saved upon the record any case which shows error in the court below, or upon which this court can determine what was the real state of the facts in the court below—1 vol. Mo. Rep. 232; Hammond v. Relfe and others; 4 vol. ibid. 23.

2.   For aught that appears on the bills of exceptions, evidence was given which removed all objections made by Mrs. McNair's counsel. As, for instance, it may have been shown that she conveyed this land when of age, as she might do with property which was paraphernal as this was—3 Febrero, 136, No. 40, and 158, No. 19.

3.   To all the objections made by plaintiff, we reply, that a minor cannot take advantage of a defect in the sale after a ratification of the proceedings, either express or implied—5 Febrero, 92 to 99; ibid. 99, No. 72; ibid. 101, No. 75, 76; 10 Martin's Rep. 735; Curia Phillippica, 139, No. 4; ibid. 153, No. 8, and 146, No. 24. Nor can the minor take advantage of the executor being the purchaser, unless claim is made in four years after coming of age—3 Martin's Rep. (O. S.) 446; 2 Partidas, 1157, law 8; 1159, law 9.   The knowledge of all the facts in the plaintiff, is shown by the deed executed by her to Pratte and others, calling for the division line established between Mrs. Camp and Sarpy as the owners of the larger tract—see Record.

We further say that, by the Spanish and common laws, all presumptions are to be made in support of judgments and of possession, of the age of those in this case; the proceedings and the possession under them being thirty years old, undisturbed and unquestioned.

JUNE TERM, 1838.

McNair v. Hunt.

4. But as a perfect answer to all the pretence of the plaintiff, we say that the claim set up is barred by prescription.

5. The bills of exceptions do not show whether there was any other testimony given in the case than that set out on the record—4 Mo. Dec. p. 23, 438; 1 vol. Mo. Dec. 232, 318; Hammond v. Relfe and others, 318, Bellisime & McCoy.

The principal question, if we go into the merits, relates to the proceedings and sale of the land in question to Sarpy by order of the judge. My positions are:

1. That a minor's property, or the property of deceased person's estate, could be sold by order of a judge, and that the guardian or executor could buy at such judicial public sale—1 Febrero, 394–5, No. 2, and 417–18, No. 50; 5 Febrero, 20, No. 301.

2. The "ordinary judge" of any district or jurisdiction, could delegate a substitute on any proper occasion, which was done in this case—Curia Phillippica, p. 9, sec. 6; Novisma Recopilacion, 3 vol. p. 569; Lib. 11, tit. 1, l. 2 and 3; 1 vol. Partidas, p. 79, law 2, p. 81, l. 5.

3. The essentials of the Spanish law were observed; a decree was made by the judge after a hearing; the sale took place by public auction after advertisements; there were three sales on three separate days; it was publicly struck off to Sarpy on the third sale, who gave security; a formal act of sale, such as was customary here, reciting all the proceedings, were made out and signed by the judge who conducted the proceedings.

If this sale was not good, there was none good in the country—3 Mart. Rep. (O. S.) 116, where it was held by the court that the Spanish laws, in their strictness, were not applicable to the colonies, particularly as relates to the mode of conveying property; and 3 Recopilacion, 535–6, shows that by the law referred to in the proceedings in the sale, many forms were dispensed with —1 Partidas, 273. The several matters that would render a judgment perfectly null, such as the judge's standing on his feet, &c. I presume would not have been considered as binding here, &c. Curia Phillippica, 139, No. 4, shows that if the proceedings on an execution are irregular, so that they would be held null, yet acquiescence cures them, and the property levied on must be sold, and ibid. p. 153, No. 8, the debtor can waive the notice of sale—146, No. 24, inverted order of proceeding does not vitiate.

The court excluded a record of a suit in chancery be-

tween Riehle's heirs and Sarpy, which was pending and was dismissed in 1816. This was about eight years after Sarpy had parted with all interest in the land, and whatever he might then have said or swore to in his answer, could be no evidence in this suit against Hunt. If fraud was what was intended to be proved, the *fact* must be proved by legal evidence, and not by hearsay and *exparte* assertions of any person, fourteen years after the fraud is charged to have been committed. Besides, the evidence, as offered, contained nothing pertinent—5 Febrero, p. 92 to 102; 3 Mart. Rep. (O. S.) 446.

Hunt likewise relies on the law of prescription, which, from the decision in the case of Lindell v. McNair, will run at least till the act respecting limitation went into force, which was in 1818.

This was paraphernal property, and prescription would run against her for it from the time she came of age—4 Febrero, 471, No. 218. She came of age in January, 1808, and the laws on the subject of prescription were not repealed till 17th December, 1818, (if they were even then,) for no law of limitation was passed before then inconsistent with the Spanish law—see Hempstead's Digest, p. 162, 150, 140, 279, 170, 112; Laws of 1818, p. 22. The case of 8 Mart. Rep. 619, does not apply to Chouteau—4 Mart. Rep. (N. S.) 212, Frique v. Hopkins; 1 Febrero, 400. In Partidas it is said that if the owner knew of the alienation, and did not claim within the ten years, he would be barred.

TOMPKINS, Judge, delivered the opinion of the court.

McNair, the plaintiff in error, was also the plaintiff in the circuit court. She sued Hunt in ejectment, and judgment being rendered against her, she prosecutes this writ of error to reverse that judgment.

The plaintiff claimed the land in question as a part of a larger tract granted by the government of Spain to Ann O. Camp, her grandmother, and to Antoine Riehle, her father. Riehle, her father, died 25th February, A. D. 1802, his wife, mother of the plaintiff, being previously dead. The plaintiff was married to Alexander McNair, A. D. 1805, and he died in the year 1826, and Ann O. Camp in October, 1803, leaving, as her heirs, three daughters, Mrs. Wherry, Mrs. Bates, and Mrs. Catharine Dodge, and three children of the wife of Antoine Riehle, of whom the plaintiff was one.

Hunt, the defendant, claims the land in litigation un-

Ejectment. Defendant claimed under one Sarpy, who was executor of Antoine Riehle, and guardian of his children, of whom plaintiff was one; he offered, in support of his title, two documents, on file in the Spanish archives of the recorder's office at St. Louis, purporting

JUNE TERM, 1838.

McNair v. Hunt.

to be the proceedings of the sale of the estate of A. Reihle, deceased, and an act of sale and adjudication of the plantation of A. Reihle, deceased, in 1802. From these documents, it appeared that Sarpy had been appointed executor testamentary of Reihle, and guardian of his children; that he had made an inventory, and applied to the Lieutenant Governor for liberty to sell the real estate; that his petition was granted by one Benito Vasques, who declared himself authorized to act judicially in the absence of the Lieut. Governor; that the land was three times offered publicly for sale, at the church door, with the customary solemnities, and sold on the eighth day after the petition was granted, by the Lieut. Governor in person: Sarpy, the high bidder. Held.

der Pierre Chouteau, who claims under Gregoire Sarpy, by purchase at a sheriff's sale, made on 29th June, 1808. Sarpy purchased the premises on the 28th day of March, 1802, at a sale then made of the estate, both real and personal, of Antoine Riehle, father of the plaintiff, as above mentioned. The plaintiff was born in January, 1787. In the spring of the year 1803, Ann O. Camp, and Gregoire Sarpy divided between themselves a tract of land, of which the land in dispute is part, and Sarpy and those claiming under him have since that time had exclusive possession of it till the present time; and it was admitted that all the right and title of Gregoire Sarpy to the said land in dispute, was vested in the defendant at the time the action was commenced. It was also admitted, that in the year 1831, the plaintiff and the said Catharine Dodge executed to Bernard Pratte and others a deed, conveying all their right to a tract of land, being part of a tract of land granted by the Spanish government to Antoine Riehle and Ann O. Camp, and of that part of the same tract allotted to the said Ann O. Camp, on a division thereof between Gregoire Sarpy and the said Ann O. Camp, by the surveyor general.

The defendant, to prove that all the right, title, claim, and interest which Antoine Riehle had at the time of his death to the tract of land originally granted to Antoine Riehle and Ann O. Camp, of which the land in litigation is part, was legally sold and conveyed to Gregoire Sarpy, offered in evidence two documents purporting to be the proceedings of the sale of the estate of Antoine Riehle, deceased, and an act of sale and adjudication of the plantation of Antoine Riehle, deceased. The plaintiff objected to these documents being used as evidence; his objections were overruled, and they were read in evidence, and the decision of the circuit court was excepted to.

The first document above mentioned, contained an account of the sale of the personal property of Antoine Riehle, deceased, by his executor, and is of no importance here, except as it forms a part of the same proceeding of which the second gives an account, to wit; the sale of the real property. They are styled in the bill of exceptions, proceedings of a public sale of the estate of Antoine Riehle, deceased, made before the then commandant of St. Louis and lieutenant governor of Upper Louisiana, which proceedings are on file in the office of the recorder of the said county, among what is called the "Spanish archives." No doubt can be

ist as to the propriety of admitting them to be read in evidence as records of judicial proceedings; but it is contended that those proceedings are null and void. The objections are:

1. In a judicial sale of an estate in which minors are concerned, nothing is to be presumed; but all the solemnities required in the alienation of such estates must appear to have been observed, or no title passes, and the sale is void. The solemnities are: 1. The sale shall be for a good and sufficient cause. 2. The estate must be appraised and an inventory made thereof. 3. That there should be thirty days notice. 4. That the real estate shall not be sold till the personal is exhausted. 5. That there shall be a decree ordering the sale, and it must be made by a competent judge. 6. That the sale shall be made at auction. 7. That the real estate shall not be sold for less than the appraisement, and if it should not bring that, there shall be a re-appraisement, in order that the terms may be altered.

By the document here received in evidence, it appears that Gregoire Sarpy had been appointed executor testamentary of Riehle, and guardian of the minor children, and had made an inventory; and that he applied to the lieutenant governor, stating that it was necessary to sell the property to pay debts, and praying that notice might be given of a public sale on the 21st March, 1802. The answer to his petition is, "granted as demanded, being authorized by the lieutenant governor, who is absent on affairs concerning the royal service, &c. (Signed) Benito Vasques." The land was three times publicly offered for sale at the church door after public prayer; first, on the 21st March, 1802; second, on the 25th; and third, on the 28th, the lieutenant governor attending in person, in his judicial character, and performing the duties of scrivener for want of a proper officer, and accompanied by two assisting witnesses and the public crier. On the last day, (termed the last adjudication,) Sarpy was the highest bidder, and became the purchaser for $820, which, says the record, being repeatedly cried out by said public crier until half past twelve of the said day, and no other person offering more, the voice "one, two, three" being given, the aforesaid plantation was thereupon adjudged to the said Gregoire Sarpy for the said sum of eight hundred and twenty dollars, and he gave security as required. Each day's proceedings were closed with equal solemnity, the lieutenant governor attending in person and performing the duties of scrivener.

JUNE TERM, 1838.

McNair v. Hunt.

1. That by the customs of this State, whilst governed by the Spanish laws, the Lieut. Governor had a right to authorize a deputy to discharge his judicial duties.

It is not pretended that the lieutenant governor transcended his powers in assuming to direct the sale of the land, but that Benito Vasques had discharged the duties of judge, is the reason assigned why all this proceeding should be declared null and void. Vasques made the order for the sale, alleging that he was authorized by the lieutenant governor, he being absent on affairs concerning the royal service. The laws of the. province affecting the rights of the parties litigant, are as much a part of the laws of this land now, as the acts of the general assembly, and the courts of this State are equally bound to take notice of each; but in the absence of any evidence of the laws of Spain in that behalf, we should be bound to believe that Benito Vasques, assuming to act as judge, was really authorized to do so. This presumption is strengthened when we see the lieutenant take up and conclude the judicial proceeding commenced by his deputy. The counsel for the defendant has not, however, left us without light, but has furnished us with an authority showing that a secular judge may appoint a deputy on occasion of absence, as well as for other reasons; the lieutenant governor was absent on the royal service—see Curia Phillippica, sec. 6. It seems that the Spanish law writers express by the word *null* or *nullity*, what we do by the words void or voidable; an absolute nullity is what we define by the word *void*, and a simple nullity is what we term *voidable*. One reason assigned for deciding the whole proceeding to be void is, that there were not thirty days notice given of this sale. To prove that there should have been *thirty days* notice of the sale, or rather, as I suppose, to prove that this sale was not made on sufficient notice, we are referred to an order of the superior court of the territory, made in the year 1806. It is in these words: "It is ordered by the court that the land in the petition (to foreclose a mortgage) mentioned, be advertised, cried and sold, according to the Spanish custom, three several Sundays next," &c. Fully according with the plaintiff's counsel in the belief that the judges of that court were able men and had much better opportunity than we have to ascertain the Spanish custom in this behalf, I am at a loss to discover how they should be better informed of that custom than the lieutenant governor of the day. The counsel of the plaintiff seems to have forgot that the notice of this sale was given by the lieutenant governor himself, in his own proper person, and that Sarpy was altogether passive. The sale was exclusively a judicial sale. It is well ob-

2. It is not clear that thirty days notice were necessary to the validity of a sale by an administrator, under the Spanish laws and usages; and, even if it were so, a shorter notice would only make the proceedings voidable, and their validity could not be questioned in a collateral suit.

served by the late chief justice of the supreme court of the United States, that the acts of an officer, to whom a public duty is assigned by his king, within the sphere of that duty, are *prima facie* taken to be within his power—see U. S. v. Clarke, 8 Wheaton, 452. The judge then spoke of a mere ministerial officer; this lieutenant governor was acting in a judicial character. As publicity was the object of the notice, it seems that the number of proclamations might have been the test of correctness. These proclamations were made when the whole population of the village went out from public prayer, and when probably there were not many families living outside of the village within twenty miles distance. It appears from the cases cited that, in Spain, thirty days notice were at some remote period required, and probably still are, but for what reason the crown of Spain could require thirty days notice to be given in this then colony, I am unable to see. But even if that were the law, I should say that the act of the sale was merely voidable, and could not be now questioned in a collateral suit; as much may be said of all the other objections here made.

An inventory, it is said, should have been made. Well, it seems one was made, for Sarpy in his application so states it, and it is not unreasonable to suppose that the lieutenant governor would not otherwise have suffered the sale to proceed. But an appraisement should have been made. The most convenient mode of appraising these goods, was to do it while the sale proceeded, and while the court was sitting, to approve or disapprove.

3. There was sufficient proof, in this document, that an inventory was made, and an appraisement was unnecessary.

The real estate should not have been sold till the personal estate was exhausted. The real estate, it seems from the record, was not sold till the personal estate was exhausted, and it must now be supposed that the court then sitting, decided the sale to be necessary, or rather, that it was decided to be necessary when Sarpy applied for an order of sale, on proof then made, proof, too, which it is as unreasonable to suppose would be preserved on record, as that an executor or administrator of the present day should preserve the evidence by which the county court is satisfied that he ought to have an allowance for money paid out in the proper discharge of his duties. The court, in the settlement of estates, represents the government or commonwealth in the protection of the rights of the successors, and those interested must attend and make their objections then, in due form of law, or be forever after silent. No honest man of

4. Though the records do not show on their face, that it was proved before the Lieut. Governor that the personalty was exhausted before he ordered the sale of the real estate, yet the legal presumption is, that such was the fact, and that the judge acted in accordance with law.

common sense would ever take on himself the administration of an estate on other terms.

The sale was made at auction, as abundantly appears on the face of the record, and with a degree of caution, perhaps, never at this day practised. The lots were very small, and the purchaser of each particular lot gave security for each lot as he purchased.

But Sarpy, the executor and guardian, purchased the land.

The guardian and others may purchase with the permission of the judge—1 Febrero, p. 394, No. 2; 3 Febrero, p. 47, No. 85; and 5 Febrero, p. 20, No. 301. The same authorities show that the plaintiff might, within four years after she came of age, viz. in January, 1808, have objected to any of these proceedings for good cause shown. The probate courts of the territory, the court of common pleas, and the courts of chancery established in 1810, each had jurisdiction. The judge presided at the sale when Sarpy purchased, and consequently he purchased by permission.

The principal privilege of the minor is the benefit of an entire restitution which is granted him, (says the same author, p. 92, vol. 5,) on account of his want of experience, liability to imposition and fraud of his adversary, in those contracts in which he is prejudiced. It might not have been at all disadvantageous either to Sarpy or those claiming under him, to have restored the land in dispute at any time after the year 1808, and the defendant, Hunt, began to improve the land by building, &c. The money produced by the sale, and interest at 6 per cent. was probably more than it would then have been sold for. But instead of proceeding to set aside the sale in a court of proper jurisdiction in due time, this action of ejectment is commenced, and the whole record of the proceedings before the lieutenant governor is objected to as evidence, as if it were a mere blank.

Every judgment, says the same author, has in its favor the presumption that it has been rendered according to the form prescribed by law, with the knowledge of the cause, and by a lawful judge having jurisdiction to render it, particularly if he be a superior one; and if it is an ancient one, the presumption is increased, that all the requisites and substantial solemnities preceded it. Nevertheless, as it happens frequently that judgments contain the defect of nullity for various reasons, which I am about to specify, they can be attacked and rescinded for this cause, although it be that, if the parties agree to it,

*5. By the laws then in force, a guardian might purchase land with permission of the judge.*

*6. That, finally, the plaintiff, by the laws then in existence, could, at any time within four years from this adjudication and sale, have objected to the proceedings, in the proper courts, but failing to do so, the judgment and adjudication, which, at worst is but voidable, cannot now be attacked, when offered as evidence in a collateral suit.*

the null judgment is confirmed, for the null act becomes valid by the consent to it, as is said in the law.

The judgment may be *null* or *unjust.* It is called null when it is rendered against the form and solemnities required by the laws; and unjust when it is rendered against the rights of the litigant; wherefore, lawyers in appeals pray the superior court to declare it null, or revoke it as unjust.

Judgments may be called and are null for want of the judge's jurisdiction or the citation of the party—see 4 Febrero, p. 336–7.

These last are what we call void judgments, and if the defects alleged in the proceedings before the lieutenant governor, of which the record offered in evidence contained a history, be such, then the circuit court should have rejected the evidence as inadmissable. But this is not pretended, and the nullities pointed out in the proceedings are merely what we call errors, for which the proceedings of the lieutenant governor might (if application had been made in due time to the territorial courts) have been possibly rescinded and revoked.

But it is contended that this tract of land was granted to Mrs. Ann O. Camp and Antoine Riehle, jointly, and that no partition was made betweent hem, and that the land in dispute being common to both, the plaintiff is entitled to recover, in this action, one-third of one-fourth, or one-twelfth part of the tract of land held by the defendant under Sarpy. The evidence is the act of partition admitted on the record to have been made between Ann O. Camp and Sarpy in the spring of the year 1803, and the absence of any positive proof of a partition between her and Riehle in his lifetime. In the act of sale, it is described at the first adjudication, as a plantation "formerly belonging to the deceased, containing one thousand four hundred and fifty-two arpens of land, part of which was under fence, on which there stands a dwelling house, &c. and orchard; which land is bounded on the one side by the widow Camp, on the other by lands of Carondelet, and on the other by the domain of the king, as appears by the figurative plat of survey, and as the same stands on this day."

More than one year after this sale, Ann O. Camp was living, and made with Gregoire Sarpy an act of partition of this land. It was also admitted that in the year 1831, the plaintiff and Catharine Dodge executed a deed to Bernard Pratte and others, by which they conveyed all that certain tract of land, and all their right, &c. to and

*A possession of thirty years in a party and those claiming under him, is sufficient to authorize a jury to presume a deed.*

JUNE TERM,
1838.

McNair v. Hunt.

in the same, whether by descent or purchase, being part of a tract of land granted to Antoine Riehle and Ann O. Camp, by the Spanish government, and of that part of same tract allotted to the said Ann on a division thereof between Gregoire Sarpy and her. How long Riehle may have been in possession of the tract sold as his plantation, does not appear. But it appears that he had erected a dwelling house and other out houses, planted an orchard, and made an inclosure; and these acts were so notorious as to gain the land the reputation of being called at the time of sale, the *plantation formerly belonging to the deceased.* If, however, we unite to his possession that of Sarpy and those claiming under him, till the time this suit was commenced, we have a possession of more than thirty years. A *figurative plat of survey,* (according to the record,) *as the same stands on this day,* was exhibited on the day of sale. No jury could hesitate to find, under such circumstances, that a division of this land between Ann O. Camp and Antoine Riehle had taken place in his lifetime, and that the act of partition made by her and Sarpy in October, 1803, was but a recognition of the former act of partition made between her and Riehle in his lifetime.

But the question recurs, why did not the plaintiff complain to a competent tribunal in due time to have this sale to Sarpy set aside? In deciding on the points of law arising on the record in this action of ejectment, we are required to look into another record of proceedings that took place thirty years past, and to discharge the duty of judges and jurors, by declaring whether there ever had been a partition of the land granted to Ann O. Camp and Riehle, in the lifetime of Riehle. The jury, in my opinion, were bound to consider the fact as proved, and if it were open to them, there is on the record an abundance of evidence to justify a finding of a partition in Riehle's lifetime between him and Mrs. Camp, his mother-in-law.

Was any error committed by the circuit court in the instruction given to the jury?

The court instructed the jury, that if they should not be of opinion that there was fraud in the proceeding, on the part of Sarpy and those claiming under him, the defendant has made out a legal title to the land in question.

The whole of the evidence in the cause, except one deed, was admitted evidence, and record documentary evidence. This deed was proved to have been made by Mrs. Catharine Dodge to the plaintiff, and by it she granted to the plaintiff *all her right and title of, in and to the*

*land in dispute,* on the 7th May, 1831. It was the exclusive province of the court to declare to the jury the law arising on the documentary evidence, and also of the admitted evidence; and it might, with the utmost propriety, have declared to the jury, whether or not, on the testimony, documentary and admitted, the defendant had made out a legal title. The deed proved to have been executed by Mrs. Dodge could avail the plaintiff nothing, unless the jury believed there was fraud in the proceedings on the part of Sarpy. In that case she would, if the jury had found the deed to be good, have recovered one-twelfth part in her own right, and one-fourth part in the right of Mrs. Dodge, the maker of the deed.

In giving this instruction, then, the circuit court committed no error as it seems to me.

For reasons above given, then, I am of opinion its judgment ought to be affirmed, and such being the opinion of the other judges, it is affirmed.

N. B. On the argument of this cause, the counsel for the appellant abandoned the point made in his brief, that the sale of the estate of Antoine Riehle was not ordered by competent authority, and admitted that the lieutenant governor might, in his absence, appoint a deputy to discharge his judicial duties. But when I wrote the opinion, I did not recollect it.