By the Court. Woodruff, J.
We have had occasion, quite recently, to follow the decision made in the case of Parsons v. Hardy, 14 Wend, 215; and approved in Wibert v. The New York & Erie Rail Road Company, 2 Kernan, 245. The principle, of which cases, is that a common carrier, in respect to the time of the delivery of goods received for carriage, in the absence of an express agreement, is only bound to due diligence, and he may excuse delay by proof of accident or misfortune, although not inevitable in the highest sense of that word, i. e., i he is not responsible for delays occurring without Ms fault. And / upon this principle ,we held that, where the damages claimed *82 were the mere consequences of delay, (such as deterioration in the value of the goods, arising solely from the increased time consumed in the transportation,) if the delay was excused such damages could not be recovered, (See Conger v. The Hudson River Railroad Company, 6 Duer, 875.)
But neither these cases, nor any other which has fallen under our observation, extend this immunity to cases in which the delay is caused either by the negligence or misconduct of the agents, servants or employees of the carrier. In Parsons v. Hardy, the alleged cause of delay was that the carrier’s boat was run against and injured by a scow, and the decision assumes, (for the purposes of the case) that the accident occurred without any want of care and skill on his part.
The Statute of 1850 (Sess. Laws of 1850, p. 231, chap. 140, § 36), requires that railroad companies shall furnish sufficient accommodations for the transportation of all such property as shall, within a reasonable time previous thereto, be offered for transportation, &c., and shall take, transport, and discharge such property, &c., and be liable for neglect or refusal, &c.
This statute came under review in Wibert v. The N. Y. & Erie R. R. Co. It was insisted, that extraordinary circumstances, wholly beyond the control of the Company, and which no ordinary prudence or foresight would have anticipated, did not excuse the carrier for delay in the transportation. But the Court held otherwise. That the reasonable time mentioned in the statute must be judged of by the circumstances existing when the property was received; and an unusual accumulation of goods at their stations, exceeding the capacity of the road itself to allow immediate transportation thereon with safety, was held a sufficient excuse for temporary delay.
But the case proceeds upon an express finding that the defendants’ road was in good order, and well provided with cars and engines, and as many freight trains were run thereon as could be run with safety. Nothing in the case warrants the idea that, if the negligence or misconduct of the agents or servants of the Company caused the delay, the Company could be said to be without fault.
The liability of the master for a neglect of duty by the servant exists independently of the question whether there is any fault in the master himself. True, the master is sometimes held liable *83 for the employment of an improper or unskilful servant, but he is often liable when no blame attaches to himself personally. And, for the same reason, he may not excuse himself for a failure to perform a duty which he owes to third persons, by showing that his servant, who. was charged' with its performance, neglected or refused to do it. The master, assuming to perform the duty, assumes also the hazard of the competency and fidelity of the servants whom he employs.
The same rule must be applied to corporations. Their operations are, necessarily, conducted by the instrumentality of agents, and to say that the want of fidelity on the part of their servants excuses them from the performance of any duty which they owe . to third persons, would be, practically, to exempt them from liability for any negligence, or any misfeasance, which was not the immediate or necessary consequence of a corporate act.
The present case is, undoubtedly, one of some hardship. It cannot, for a moment, be claimed that a combination, resulting in a refusal to work, by one hundred and forty out of one hundred and sixty-eight men of skill, whose services were indispensable to the conduct of the defendants’ business, ought to have been foreseen, when there was no just cause for such a refusal: And it was probably impossible, by any ordinary means, to have supplied their places on the day on which their refusal took effect; indeed, on so short a notice as the defendants received, it may be regarded as quite impossible. Nevertheless we must regard the hazard of such an occurrence as resting upon the employers. They alone have it in their power to secure, by proper contracts, indemnity against the consequences of misconduct by the employee. The owner of goods has no control, .or right of interference in the matter, and we perceive no ground on which to relieve the defendants from the hazard to which the nature of their business, and the vast extent to which, it involves the employment of assistants, necessarily subject them. And although they are, in a degree, placed within the power of extensive combinations among their servants, that, we think, furnishes no legal reason for visiting the consequence upon third persons. Practically, the defendants in such circumstances may suffer, by the misconduct of their servants, without redress, but the law imposes no such hardship, on the contrary, it will hold the unfaith *84 ful servant liable for the direct and immediate consequences of his own fault, and' this will, so far as the law can do so, give to' the master indemnity.
It ought not to be doubted, and probably would not be doubted, that if, by the negligence of a single engineer in charge of a train, or by his perverse refusal to perform his duty, his train was unnecessarily delayed, the Company would be liable for the delay. When the delay is said to be excused if it happen without their ‘‘fault,” the term is not.used as imputing personal blame, but it means without fault on their part, in their servants or otherwise.
If this be so, it is difficult to perceive how, in principle,- the' rule of liability is affected by increasing the number of servants who are guilty.
An individual carrier may be so conducting his business, that it is only necessary for him to employ one servant to drive one of his wagons; Suppose that servant, when at a distance on his journey, abandons the wagon, and days elapse before the carrier hears: of its non-arrival, or learns the cause; In such case, assuming .that there was no want of care or judgment in selecting his servant, the delay was as to the master personally, without his fault, and in a sense unavoidable, and yet he cannot be held excused. The fidelity of the servant was at his risk—the fault of .his servant is, in a legal sense, his fault.
We cannot think the rule would be otherwise if his business require him to employ a hundred servants, and they all prove unfaithful. Such a case is, of course, extraordinary, and may create a hardship, but we. do not perceive that any new rule is to be prescribed for that reason. If it may be, what number of servants must combine to call for its application ? Ho answer to this.question suggests itself to our minds.
We apprehend the rule then to be, that the causes of delay, Which will excuse a carrier, from the performance of his duty to carry within the usual or ordinary period required for the transportation he undertakes, must be those only which occur without his fault, or the fault of his agents, servants, or employees.
And a hindrance caused by the tortious acts of third persons, over whom the carrier has no control, and to whom he stands in *85 no relation involving responsibility for their acts or defaults, will excuse his delay, according to the cases above referred to.
Unless then the defendants were in the present case hindered t in transporting the goods, without their fault, or that of their agents, or servants, they are liable in this action.
Their answer in terms avers that the delay was caused by the wrongful refusal of their engineers, agents, and employees to perform their duty, or to obey the defendants’ just and necessary rules, etc. And the Referee has found that the delay was occasioned by a strike of the defendants’ engineers, and their refusal to work.
If the views above expressed are correct, and we do not doubt that they are, then upon this finding, and this statement in the answer, the defendants are liable.
But the defendants’ counsel insists that the finding of the referee, in this particular, is against the evidence, and it is sought to avoid the effect of the averment in the answer, by a motion to conform the answer to the facts proved.
If we were of opinion that the proofs showed, that when the fault of the engineers happened, which caused the delay, they had left the employment of the company, in such wise that the company were not responsible for their acts, it is not entirely clear that, under the 173d section of the code, upon which the motion is founded, we could allow such an amendment.
The defence had, in this respect, been rested upon the ground that the delay was caused by the wrongful combination, and subsequent misconduct, of the defendants’ servants. The plaintiff had a right to go to trial, assuming that the persons causing the delay, were such servants. The case appears to have been tried upon that theory. Not only so; the objections to evidence indicate that the defendants’ counsel insisted that evidence in support of the answer, as put in, was relevant as establishing a defence.
Under such circumstances, it is very questionable whether the proposed “amendment does not change substantially the defence.” If it does, we are not authorized to grant the amendment. The defendants, in such case, are bound by their admission. The plaintiff was under no obligation to offer evidence of the fact so admitted; and the report of the referee is supported *86 by the admission, although no proof was given of its truth, or though the defendants may have given some evidence which tended to prove the contrary. (Brown v. Colie, 1E. D. Smith, 270.)
But, without resting upon this view of the subject, we think the report of the referee was not against the evidence upon this point, and therefore that the amendment is not proper in any aspect.
It was the strike' of the defendants’ engineers, the refusal of men in the employment of the company to perform their work, that caused the delay. It is true, that one of the defendants’ witnesses says, that on the day agreed upon, the engineers “ left the employ of the road.” Be it so, and still it was that wrongful act which caused the delay. In truth, that language, in the mouth of the witness, meant no more than the testimony of the other witness, that they refused to work, or stopped work. It was not shown, or attempted to be shown, that the period of the employment of these engineers expired on the day referred to, and that their refusal to work was an actual separation of themselves from all connexion with the company; on the contrary, the correspondence, given in evidence, exhibits the defendants as inviting them to return to duty. Indeed, had it appeared that the company had made no provision for the future, but voluntarily suffered all these contracts to expire, without securing the services of the requisite number of engineers, for the time next ensuing, a further ground for charging the defendants with fault, would at once arise, in their own neglect to hire engineers, for the service, which they, of course, knew would be necessary. But the proofs do not call for this view of their liability.
It is entirely clear, that on the 20th of June, the one hundred and forty engineers were in the employment of the defendants, and were their servants, and that on that day, in utter neglect. of their duty, they abandoned their engines, and suffered the work of the company to stand still.
The purpose of the proposed amendment is, no doubt, to enable the defendants to say, that after the engineers left their engines, they had, by their own act, terminated their relation to the defendants as servants, and are therefore to be regarded as strangers and tort feasors, for whose acts, if they operated to" *87 cause delay, the defendants are not liable within the cases referred to.
Doubtless, the act of one who, being a servant, is discharged, or voluntarily abandons the service, committed after the actual termination of his relation to the master, may, if it cause delay, without the fault of the master or his servants, excuse such delay, and even although the act of the servant, in so abandoning the service, was wrongful and in violation of his express engagement. But when the very act of abandonment causes the delay, the case is plainly otherwise: then it is his want of fidelity as a servant, and not the tortious act of one not a servant, which causes the delay complained of.
It is true that there was some evidence that other engineers were prevented from performing service, after the rebellious engineers had quit their work, by fear of their lives, and that some acts of violence were committed. But the scope and tendency of the evidence, as a whole, is to show that it was the sudden and faulty refusal of this large body of the Company’s engineers, then their servants, to do their duty, that caused the delay in question; and we think that the finding of the referee, in this particular, is not without evidence, nor against evidence. The amendment sought ought not to be allowed.
The case is novel and peculiar; Our view of the subject seems to place the defendants in a condition of onerous responsibility; indeed, to place them in a good degree in the power of their own employees, and it may be to drive the defendants, under similar circumstances, to submit to unreasonable requirements made by their servants, involving a revocation of rules and regulations of great importance to themselves, and necessary to the preservation of the lives and safety of their passengers. In this aspect, the question assumes an importance affecting the public as well as the defendants. But the rules governing their liabilities are not, in truth,' conceived in any harsh spirit. We perceive no ground, upon which they can be relieved from duties which apply to others, whose business is less extensive, and who, therefore, are less at the mercy of employees. W e are bound, we think, to say it is their duty to make and enforce obedience to reasonable and prudent rules for the preservation of life and property; and also, their duty to employ faithful servants, and answer for their fidelity. *88 The points urged by the appellants on the argument, embrace many particulars, but what has been said seems necessarily to cover them all, except, perhaps, one, which is founded upon a conceded error in the report of the referee, in which he states that the plaintiff’s goods were received for transportation in May and June, 1854, when Counsel on both sides agree that there is no evidence that any were received prior to the 19th of June. Indeed, the referee upon proof that the goods arrived in Hew York on the 7th, 8th, and 10th of July, finds a delay and detention of about seventeen days. His report is, therefore, substantially in conformity to the proof; the word “ May,” is a clear mistake. The period of delay is correctly found, and its cause is correctly stated. This mistake (which is probably only clerical), did not affect the result, and ought not to affect it. The defendants have not .been charged with any delay occurring between May and the 19th of June. They are, by the report of the referee, held liable for the damages caused by the detention produced by the misconduct of their engineers, in the interval between the 19th of June and the 10th of July; and only for the delay within that period. The mistake appearing in the report, therefore, does not prejudice the defendants. It is inconsistent with the other part of the finding, and has not, in fact, entered into the question or ground of liability. We think the judgment ought not to be reversed by reason of such a mistake, when the error has not affected the result.
The judgment should, therefore, be affirmed with costs. -