HARRIS *et al. v.* NORTHERN INDIANA RAILROAD COMPANY.

The plaintiff, having cattle to be transported by railroad, was shown two kinds of cars and he made his choice. The cars selected had two defects: one palpable to the plaintiff; the other — spikes on the inside — would have been visible to the plaintiff if he had entered the cars: *Held,*

When the owner of property to be transported makes his own selection of the vehicles, under circumstances which charge him with full knowledge of their capabilities and defects, the carrier is not responsible for any injury which may result exclusively from such defects.

The carrier, however, is bound to see that the freightor has such knowledge. He is not bound to enter the vehicles to examine them. To exonerate the carrier he must show that defects not palpable and visible were pointed out, or prove such circumstances as will justly charge the freightor with knowledge of their existence.

The freightor is entitled to rely upon the vehicles making their passage in the ordinary time, and the carrier is responsible for an injury resulting from an improper detention, though the visible defects of the cars were the means of effecting the injury.

Where the freightor must submit to an injurious detention of his property or to the use of a vehicle having a visible defect from which but slight damage could result during a transit in a reasonable time, his election to use the vehicle is not such negligence as to exonerate the carrier from the further damages resulting through an extraordinary detention.

The train conveying the cattle was detained sixteen hours at an intermediate station, in constant readiness to start when another train, which was belated, should arrive. The owner of the cattle proposed to take them out of the cars and to water them, but refrained on being informed by the carrier that the cars might start within a period too brief for that purpose: *Held,* that it was a question for the jury whether this amounted to a refusal by the carrier to permit them to be taken out.

The carrier, having the control of the train, is responsible for any injury to the cattle from their not being watered at the place of detention. The owner was not required to demand that the train should proceed, nor to persist in attempting to water the cattle until forcibly resisted

APPEAL from the Supreme Court. The complaint was that the defendant as a common carrier, received from the plaintiffs at Laporte in Indiana, one hundred and eight beef cattle, and four hundred hogs, to be transported to Toledo in Ohio; that the defendant's agent placed the cattle in cars which were too low for the cattle to stand upright without scraping and bruising their backs, and which had iron staples projecting into the cars against which the cattle were jammed and rubbed; and that the defendant improperly and needlessly detained the cars at a place called Sturges Prairie for sixteen hours, and wrongfully refused to permit the cattle to be removed from the cars for any period during such detention; that the cattle were greatly bruised, reduced in flesh, injured in appearance and their value impaired. Upon the trial at the New York Circuit, before Mr. Justice ROOSEVELT, it was proved that Dusenbury, one of the plaintiffs, was at Laporte and bargained for the transportation of the cattle. He saw at the station two kinds of racks used for that purpose, one of which was covered, "which"—the only witness for the defendant testified—"cattlemen always objected to," and the other open, having cross-pieces at the top for the purpose of supporting the sides. He preferred the open racks. They had iron staples on the door-posts on each side of the cars, for the purpose of receiving a wooden bar. These projected into the car nearly three inches. The plaintiff was informed, before the cars which conveyed the cattle started, that the train was to be so run as to be subject to the movements of passenger trains. He accompanied it with two assistants to see to watering the cattle, preventing their lying down at stopping places, &c. There was a detention of sixteen hours at Sturges Prairie, in consequence of a passenger train being belated by a collision further west, and of the regulation subordinating its movement to that of passenger trains. It was shown that when the cars are at rest cattle are uneasy, move about, hook and crowd each other, are disposed to lie down and are thus liable to be trampled upon or otherwise injured more than when the cars are in motion. During the detention the plaintiff proposed to let the

cattle out of the cars into a yard of the defendant adjoining the station, but he was informed by the defendant's agents that the cars might start in ten minutes. The cattle had no food nor water during the thirty-six hours they were upon the train. In consequence of their weariness, many of them got down and were trampled upon. Their backs were injured by the cross-pieces, which were too low for cattle of large size, as were the plaintiffs'. There were ridges on their sides where the hair was rubbed off, and bunches and bruises which might have been produced by rubbing or jamming against the iron staples. The defendant took an exception to the judge's charge, and several exceptions to his refusals to charge, which are fully stated in the following opinion. The plaintiffs had a verdict and judgment, which having been affirmed at general term in the first district, the defendant appealed to this court.

*Charles Tracy*, for the appellant.

*Mortimer Porter*, for the respondents.

SELDEN, J. The only questions presented in this case arise upon the charge of the judge to the jury, and upon his refusals to charge as requested. The counsel for the appellants, in the first point which he makes, groups together the first, sixth and seventh exceptions to the charge, and insists that they are all well taken, and for substantially the same reasons. Those exceptions, as stated in the printed case, are as follows:

First exception: "The defendants' counsel requested the court to charge the jury that the defendants' contract was only to carry the cattle *in the particular cars* in which they were in fact carried. The court refused so to charge, and instructed the jury that if the cars were maladapted to the purpose in case of detention, the defendants are responsible if damage result. To which refusal and instruction the defendants' counsel excepted."

Sixth exception: "The defendants' counsel requested the court to charge the jury, that the plaintiff having notice of the

existence of the cross-pieces, and of the width of the cars, cannot recover any damages consequent on those facts. The court refused so to charge and the defendants' counsel excepted."

Seventh exception: "The defendants' counsel requested the court to charge the jury that the plaintiffs were guilty of negligence, and therefore could not recover. The court refused so to charge and the defendants' counsel excepted."

The argument of the counsel in support of these exceptions is, that this is not one of those cases where property is merely delivered to a railroad company to be transported, and where the company selects the vehicles and makes its own arrangements for such transportation, nor a case where the vehicles provided by the company have some latent defect which cannot be discovered, but one where the owner of the property chose for himself the vehicles to be used—the defects by which the damages was occasioned being visible and palpable—and hence that the judge should have charged the jury as contained in the said requests.

These propositions and the principles implied in them, although in the main correct, are nevertheless, I think, not fully sustained by the evidence. The counsel is no doubt right in the position, that where the owner of the property to be transported makes his own selection of the vehicles, under circumstances which charge him with full knowledge of all their capabilities and defects, the company is not responsible for any injury which may result exclusively from such defects. I cannot concur with the respondent's counsel in holding that railroad companies are bound at all events, and at all times, to have on hand at every point upon the road, suitable, safe and convenient vehicles sufficient to carry all the property which may be offered for transportation. Such a requirement would be in a high degree unreasonable. Amid the varying exigencies attending the business of a railroad company, it must sometimes happen, notwithstanding the utmost vigilance and care, that their engines, cars and other vehicles will be somewhat unequally and irregularly distributed. They are bound

no doubt to make reasonable effort to fulfill the just expecta-
tions of the public, but precisely how far their obligations in
this respect extend it is unnecessary in this case to decide, and
I forbear therefore to discuss the question.

Conceding that where the owner of the property makes his
own selection of vehicles, with full knowledge of their condi-
tion, the company is not responsible for the consequences, yet
the latter should take care that the owner has that knowledge.
The company has greatly the advantage in such a transaction,
inasmuch as its agents are, or must be presumed to be, familiar
with the condition, capacity and quality of their vehicles;
while a stranger, called upon to make a selection, without any
previous knowledge, would be very liable to overlook many
defects.

I do not intend to say that it is incumbent upon the company
to point out such defects as are palpable, and which could not
well be overlooked without some degree of negligence; but I
do hold, that if the vehicles selected have defects which are not
pointed out, it is incumbent upon the company to prove affirm-
atively that they were open, visible and apparent.

In the present case the defects were twofold: first, the low
cross-pieces; and, second, the projecting staples.   In regard to
the cross-pieces, it is easy to see that the defect must have been
so palpable to an experienced man—as we may, perhaps, pre-
sume the plaintiff Dusenbury to have been—that he could
hardly fail, with ordinary vigilance, to discover it.   Not so,
however, with respect to the staples.   They were upon the
interior of the cars or racks.   It does not appear that Dusen-
bury entered them.   He was not bound to do so.   He had a
right to presume that the company would not offer him cars
which had projecting spikes, or irons of any kind, which would
tear or bruise the flesh of the cattle.   He may, it is true, have
known all about these staples; but it rested with the company
to show this, or at least such circumstances as would justly
charge him with such knowledge; and they offered no proof
on the subject.   That it was an improper mode of constructing

Harris *v.* Northern Indiana Railroad Company.

the cars is virtually conceded by the company, by their subsequently removing the staples in question.

The import of the first of the defendants' requests to charge was, that the contract on the part of the defendants was to carry the cattle in the particular cars selected, as they were, with all their defects; and, hence, that they were not responsible for any injury arising from such defects. What has been said shows that the judge was not bound to give this charge, because, in respect to the projecting staples, the company had not proved enough to exempt themselves from responsibility.

The exception to the instruction actually given in connection with this refusal was not well taken, for a different reason. The language of the judge was, that "if the cars were maladapted to the purposes, *in case of detention*," the defendants were responsible if damages resulted. Now, as the judge did not distinguish here between the maladaptation arising from the cross-pieces and that produced by the staples, this part of the charge would have been erroneous, but for the qualifying words, "in case of detention." But it is obvious that the plaintiffs were not bound to select cars with reference to their being improperly detained. They had a right to act upon the assumption that the company would do its duty by conveying the property through in the usual time. They, therefore, by selecting the cars themselves, assumed the responsibility for such damages only as would have resulted from the defects, in case there were no unjustifiable detention. The judge, therefore, was clearly right in instructing the jury that, if the cars were not suitable, in case of detention—meaning, of course, *improper detention*—then the defendants were responsible.

What has been said is an answer to the sixth exception. The seventh exception was based upon the familiar rule that where a party seeks to recover damages which have resulted from the negligence of another, he must be free from the charge of negligence himself, or his action cannot be sustained. The negligence imputed to the plaintiffs in this case consists in the improper selection of cars. But they were not necessarily chargeable with any negligence in that respect. The plaintiffs

were at Laporte with their cattle, and to be detained there would have been very injurious to their interests. They might well prefer to risk the slight injury likely to result from the cross-pieces, in case the cars went directly through, rather than to sustain the loss arising from the delay. In regard to the staples they were not, under the proof as it stands, guilty of any negligence. Besides, if there had been any proof of negligence, the question belonged to the jury to decide; and the request was wrong and the exception not well taken for this reason.

The only remaining point made by the appellants' counsel, relates principally to the damages resulting from the cattle not having been watered at Sturges Prairie. The counsel has collected in one group all the remaining exceptions and made but a single point upon them. It is entirely clear that none of these exceptions are well taken. The first request made to the judge in relation to watering the cattle, was to charge that the plaintiffs had a right to take out their cattle at Sturges Prairie, and hence the defendants were not responsible for the damages. But it is apparent that they had neither the right nor the power to do this. The train was in the charge and under the control of the agents of the company, and the plaintiffs could not interfere with it. If they could take out the cattle against the will of these agents, they could detain the train, and keep it upon the track, perhaps to the entire derangement of the plans and business of the company.

The judge was next requested to charge that the defendants were not responsible for the damages resulting from the cattle not being watered, unless they forcibly hindered the plaintiffs from watering them. It needs no argument to show that it would have been improper to charge thus. The company having the rightful control of the train, the plaintiffs were obliged to regard their mere refusal to have the cattle taken out, and had no right to persist until forcibly resisted.

The next request was to charge that the possession of the cattle while the train stood at Sturges Prairie, was wholly in the plaintiffs. This request was of course unfounded. The possession, if at all, was certainly not wholly in the plaintiffs.

Harris *v.* Northern Indiana Railroad Company.

The judge was clearly right, therefore, in refusing severally to charge according to those requests. He was also right in charging the jury that they were to determine whether the plaintiffs were excused from attempting to water the cattle at Sturges Prairie, by what was said by the defendants' men. Whether what was said amounted to a refusal to have the cattle taken out was of course a question for the jury.

An exception was also taken to the refusal of the judge to charge as requested, that the defendants were not answerable for any consequences of the delay at Sturges Prairie, unless the plaintiffs made an actual demand that the train should proceed. It is clear that no such demand was necessary. The defendants were bound by their contract, to proceed with all due diligence to Toledo, without any demand or request on the part of the plaintiffs.

These are the only exceptions taken at the trial, and what has been said embraces all the points presented by the case. Had an exception been taken to the omission by the judge to discriminate between the damages which would have resulted from the defect in the cross-pieces if the train had gone directly through, in the usual time, to Toledo, and the damages which were produced by that defect in consequence of the stoppage of the train at Sturges Prairie, it might have been fatal to the judgment, because in the view which has been taken of the case, the responsibility of the company extended to the latter damages only. But it was the duty of the counsel to call the attention of the judge to this distinction and request him to charge on the subject. This not having been done, no advantage can now be taken of the omission. It is not probable, if the distinction had been presented, that it would have materially affected the result; as the evidence shows that nearly all the damages of this kind were produced by the delay.

The case presents no question as to the justifiable nature of the delay. The company were under obligation to proceed with the usual dispatch. It was for them to excuse the delay, and they offered no evidence on the subject.

If these views are correct the judgment should be affirmed.

JOHNSON, Ch. J., COMSTOCK, DENIO and ALLEN, Js., concurred.

Judgment affirmed.