PEET vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*Common carrier of goods—Delay from press of freight—Order in which goods must be carried—Measure of damages in case of loss from delay—Contract construed.*

1. An instruction that "press of freight will not excuse failure [of a railroad company] to carry goods in ordinary time, where such press had existed for a long time, and was known by the company when they received the goods, *unless they notified the shipper*," held to be erroneous.

2. There is no invariable rule requiring freight to be carried in the order in which it is received, without regard to its character and condition, or its liability to perish.

3. Where flour delivered to a common carrier in this state to be transported to New York, for sale, was not delivered there within a reasonable time, the measure of damages is the depreciation in its value in the New York market between the time when it *should have been* delivered and that at which it *was* delivered—it having actually been sold at the diminished price.

4. Plaintiff shipped flour by defendant's road at Neenah, and received from the agent there the following: "Chicago and N. W. Railway:—Neenah, January 16, 1862. Received (as agents and forwarders) from E. W. Peet, the following packages (contents unknown), in apparent good order, viz: Marked: 'Account of Bank of Neenah, care of Jesse Hoyt & Co., NewYork, care of Charles S. Tappan, General Freight Agent, Chicago.' Articles: One hundred barrels Flour, Round Hoop, Harmony Mills. *Contract from Neenah to New York at* $2.25 *per bbl.* J. H. SMITH, Agent." The words in parenthesis were printed: those in italics were written. *Held,* (Downer, J., dissenting,) that this was a contract by the defendant to transport the flour from Neenah to New York; and it was liable as a common carrier for the whole distance.

5. The contract being unambiguous in this respect, oral evidence as to its meaning was inadmissible.

APPEAL from the Circuit Court for *Winnebago* County. Action for damages for defendant's failure to deliver at the

city of New York, within a reasonable time after their shipment, sundry consignments of flour. The decision of the court on a former appeal will be found in 19 Wis., 118–125. The form of the contract will be found set forth in that report. At the second trial, defendant's evidence tended to show, among other things, that during the months within which plaintiff's shipments were made, (January to April, 1862), the length of time usually required for carrying freight from Chicago to New York was much greater than ordinary, the delays being caused "partly by the general increase of business at Chicago and tributary points; partly by the closing of the Mississippi river; but mainly by the closing of the Baltimore and Ohio Railroad, and also the occupancy of the Pennsylvania Central Railway line, to a large extent, in carrying government freight." There was also evidence of the existence of certain facts in the arrangements for business on the Hudson river which led to an extraordinary accumulation of freights at Albany during that period, and consequent delay in the delivery of goods from the west at New York.

The defendant offered to prove "that on or about the 1st of January, 1862, and before any of the contracts or receipts mentioned in the complaint were made with plaintiff, millers and flour dealers at Neenah, including plaintiff, wanted defendant to get up a special form of contract for shipment of flour from Neenah to New York city, which would show the exact cost of transportation to New York, so that they might the better get advances upon the shipments, and enable bankers to determine the amount of advances; and in pursuance thereof, witness, as agent of defendant, got up said shipping contract or receipt, with the understanding and agreement between plaintiff and other millers and defendant, that the same was merely to determine and govern the price of freight to New York, and nothing further, and in pursuance of such understanding and agreement, these forms were got up." The evidence was ruled out.

The instructions given by the court, to which exceptions

were taken by the defendant, are stated in the opinion, *infra.* Verdict for the plaintiff; new trial refused; and defendant appealed from a judgment on the verdict.

*Gabe Bouck,* for appellant, as to the delay in the delivery of the flour being excused by the facts proven, cited Story on Bailm., § 545*a,* and cases there named; *Parsons v. Hardy,* 14 Wend., 215; *Wibert v. N. Y. & Erie R. R. Co.,* 2 Kern., 245; *Conger v. Hudson River R. R. Co.,* 6 Duer, 375; *Wallace v. Vigus,* 4 Blackf., 260; 4 Whart., 204. As to the rule of damages, he cited 2 Greenl. Ev., secs. 253–6; Sedg. on Dam., ch. 3; 6 Hill, 648; 6 Wend., 538-9; 10 Cush., 177; 19 Barb., 36; 28 id., 515; 29 id., 633; 1 Gallison, 315; *Hamilton v. McPherson,* 28 N. Y. 72; *Griffin v. Colver,* 16 N. Y., 494–5.

*Moses Hooper,* to the point that the shipper should have been notified of the necessity for delay, cited *Wibert v. R. R. Co.,* 12 N. Y., 257. As to the rule of damages, he cited *S. & M. R. R. Co. v. Henry,* 14 Ill., 156; *G. & C. U. R. R. v. Rae,* 18 id., 488; Sedgw., 370–73; Redfield on Railways, 234, sec. 6; *Nettles v. R. R.,* 7 Rich., 190; *Scovill v. Griffith,* 2 Kern., 509; 10 Watts, 418; 22 Barb., 285; 26 id., 564; 29 id., 643; *Griffin v. Colver,* 16 N. Y., 489.

DOWNER, J.    At the trial, the circuit court gave to the jury, among others, the following instructions:

" *Third.*    That press of freight will not excuse failure to carry in ordinary time in cases where such press of freight was known by the company when they received the freight, and had existed a long time when the goods were received, unless they notified the shipper of the necessity of delay."

" *Fourth.*    That press of freight will not excuse failure to carry in ordinary time, unless freight is carried in the order in which the same is received."

" *Fifth.*    That in case of press of freight and consequent delay, a carrier has no right to give preference to freight of one person or company over that of another."

The appellant contends that each of these instructions was erroneous. The evidence tended to prove that the reason, or one of the reasons, why the respondent's flour did' not reach New York sooner, was that preference was given to perishable property, such as dressed hogs and poultry ; and it was proved that it was the general custom on all railroads in 1862 to give such perishable property preference over other freights. The fourth and fifth instructions are to the effect that such preference could not be legally given. Common carriers are bound to deliver goods within a reasonable time ; and what is a reasonable time depends upon all the circumstances of each particu lar case. If by accident or misfortune, not amounting to an inevitable casualty or the act of God, the transportation of the goods is retarded, the carrier will not be responsible for such delay, if he has used due care and reasonable diligence, and the goods are finally safely delivered. Story on Bailm., §545a; *Parsons v. Hardy*, 14 Wend., 215 ; *Wibert v. N. Y. & Erie R. R. Co.*, 12 N. Y., 245.

The rule then is, that the common carrier is to deliver the goods within a reasonable time. If the carrier received for transportation goods perishable and those not so at the same time, and there was a press of freight, so that he could not transport and deliver all before the perishable goods would perish, but could deliver the perishable in time to save them, if the delivery of the others was delayed, can there be any doubt what his duty would be ? Can there be any doubt that a preference in such a case would be reasonable, and if reasonable, that the perishable goods, if they did not have the preference, would not be delivered in a reasonable time, and the carrier would be liable ? If not, there is no invariable rule that freight of all kinds shall be transported and delivered in the order in which it is received. If the custom of giving such preference has been long established and is well known, the parties are supposed silently to adopt the custom as part

of the contract, unless it conflicts with its express terms. *Cooper v. Kane*, 19 Wend., 386; 6 T. R., 14; id., 398. We doubt, however, whether the proof showed that this custom had been so long established as to make it part of the contract. But we think the practice reasonable, and not in violation of any rule of law. We therefore hold the fourth and fifth instructions erroneous.

We are also of opinion that there is no rule of law requiring the notice mentioned in the third instruction. We have seen that the general rule is, that the common carrier is to transport and deliver the goods within a reasonable time; and what is a reasonable time is to be determined by all the circumstances of each particular case. If the shipper has not all the information he desires as to the circumstances or causes which will expedite or delay the delivery of the goods, it would be more reasonable that he should make inquiry, than to impose on the company or its agents the duty of giving unasked a statement of such circumstances.

The rule of damages as given to the jury by the circuit court was, that the plaintiff was entitled to recover the difference between the price of the flour when it should have arrived in New York, and the price at the time when it did actually arrive, if it was sold at the latter depreciated price. What is the measure of damages in such a case has been differently decided by different courts of the state of New York, and each has supported its own views by learned and able opinions. See *Wibert v. N. Y. & Erie R. R. Co.*, 19 Barb., 36; *Jones v. N. Y. & Erie R. R. Co.*, 29 id., 635; 22 Barb., 278; 26 Barb., 564. The circuit court followed *S. & M. R. R. Co. v. Henry*, 14 Ill., 156; *G. & C. U. R. R. Co. v. Rae*, 18 Ill., 488, and *Nettles v. S. C. R. R. Co.*, 7 Richardson, 190. We think, on principle as well as authority, the ruling of the circuit court as to the measure of damages was right.

Again, it is contended by the appellant that the court below

erred in ruling out the evidence offered to explain the written contract. The construction of the contract on its face was settled by the decision of a majority of this court when the case was before us on a former appeal, and that decision in this case is binding upon us. If there is an ambiguity in the contract (and I am inclined to think there is), the testimony should have been received. In the construction given to the contract by the majority of the court, it appears to me that no force or meaning whatever was given to the words " as agents and forwarders" in the contract. With the testimony offered they would be full of meaning. The majority of the court, however, are of opinion that there is no ambiguity, and that the offered testimony was rightly rejected.

*By the Court.*—The judgment of the circuit court is reversed, for errors in giving the third, fourth and fifth instructions asked by the plaintiff, and a *venire de novo* awarded.