# HENRY SOHNS, Appellant, *v.* THE RUTGERS FIRE INSURANCE COMPANY, Respondent.

*Insurance—Mistake—Policy to wrong party—Endorsement to right party.*

Where a proper party applies for an insurance and pays for the same, and by mistake of the company the policy is issued to the wrong party, and on discovery of the error the policy is returned to the company to be corrected and to be transferred to a third party, and the company, without correcting the error as to the party to which the policy was first issued, endorse, "the loss, if any, to be paid to H. E."—the party interested—such endorsement will be treated as making a new contract of insurance with the party to whom the loss is to be paid according to such endorsement.

In 1856, Charlotte Juipe owned a house and some furniture, occupied and used by her, in Westchester County, upon which she desired insurance for four thousand dollars. She employed her husband to obtain such insurance, and gave him fifty dollars to pay the premium. The husband went to New York, and made application to the Stuyvesant Company for the whole amount of insurance, informing the company that it was to be insured for Charlotte Juipe, who owned the property, as appears from his uncontradicted testimony. The company agreed to make the insurance, and received from him the fifty dollars for the premium. The Stuyvesant Company, not wishing to assume the whole risk, applied to the Defendants, who agreed to insure twenty-one hundred dollars of the amount. About a week afterwards, A. H. Juipe, the husband, called again, and the Stuyvesant Company gave him two policies upon the property, one for $2,100, executed by the Defendant, and one for $1,900 executed by itself, both insuring A. H. Juipe, the husband, instead of Charlotte, the wife. A. H. Juipe did not know this, but spoke about there being two policies, when he expected but one; but was assured Defendant's company was good, and that it was all right, and he took the policies. The mistake in the policies remained undiscovered by Charlotte and A. H. until Charlotte was called upon for additional security for the mortgages given by her, when she took both policies to Mr. Thorn, the attorney of the mortgagees, who at once

discovered the error, knowing that the title was in Charlotte, and informed her thereof, at which time she employed him to procure them to be converted, and authorized him to have, in addition, the losses made payable to the respective mortgagees—the policy in question to Mary Entwistle. Thorn gave the policies to a clerk to go to the offices and get them arranged in accordance with the wishes of Mrs. Juipe. The clerk proceeded with the policy in question to the Defendant's office, and presented the same to Defendant's secretary, and informed him that the property in question belonged to Mrs. Juipe, and that she wanted the loss, if any, made payable to Mrs. Mary Entwistle. The secretary endorsed on the policy the loss payable as requested, and returned the policy to the clerk, who received it, supposing it all right. The secretary made no verbal reply to the request of the clerk, and did nothing except as above stated. The property insured was afterward, and during the life of the policy, destroyed by fire, and Charlotte Juipe and Mary Entwistle each assigned their claim to the Plaintiff, who prosecuted the Defendant for the recovery of the amount insured. Upon the trial the only question was whether a recovery could be had for the reason that the insurance was to a A. H. Juipe, the husband, and the title was in Charlotte, the wife. The cause was tried before a jury, and the Judge, upon the Plaintiff's proofs, dismissed the complaint upon Defendant's motion, to which Plaintiff excepted. Judgment was entered in accordance therewith, and after affirmance thereof by the General Term of the Superior Court, the Plaintiff appealed to this Court.

Messrs. *Spring & Wilmore* for Plaintiff.

*L. H. Miller* for Respondent.

GROVER, J.—The Plaintiff showed no right to relief upon the ground that there was a mistake in making out the policy originally by the Defendant. Although the evidence showed that the application made for insurance upon the property to the Stuyvesant Company, by A. H. Juipe, was for insurance in behalf of Charlotte Juipe, the owner of the property, yet there was no evi-

dence tending to show that any such application was made by that company to the Defendant, nor but that the Defendant made the policy in strict accordance with the application and agreement entered into.   It is clear that no recovery could be had upon the policy as made, because A. H. Juipe was the party thereby insured, and he had no interest in the property, either at the time of making the insurance, or at any time thereafter, and, consequently, had sustained no loss, and, therefore, had no claim for indemnity.

The ground entitling the Plaintiff to relief, if any, was the presentation of the policy to Defendant's secretary, by the clerk of Thorn, the clerk at the time informing the secretary that Charlotte Juipe owned the property, and wanted the loss, if any, made payable to Mary Entwistle.   The secretary must be presumed to have understood this, as there was no contradictory evidence. The taking the policy, and making an endorsement thereon making the loss payable as requested, without expressing any dissent to regarding the policy as a valid one in behalf of Charlotte Juipe, the owner, must be regarded as an agreement on his part to make a valid policy to her upon the property.   The company had already received the premium for a valid insurance upon the property, to the amount expressed in the policy.   It had executed and delivered a policy, supposed to be valid, but which, through mistake, probably of the Stuyvesant Company, was a mere nullity.   This transaction with the clerk, unexplained, required the finding of an agreement by the Defendant to insure Charlotte Juipe, the owner of the property, in consideration of the premium already received.   Whether the secretary supposed the policy was made to her originally, as the assured, and believed the remark of the clerk, that she owned the property and desired the loss made payable to Mrs. Entwistle, to show that the change in that respect was desired by the assured; or whether, through inadvertence, the correction was omitted, does not appear, nor is it material.   At any rate, the assent of the secretary to an agreement to insure Mrs. Juipe does appear.   It is well settled that an agreement by parol to insure, and to make out a policy, when the

terms are all understood, is binding upon the insurer, and will be enforced in the Courts. In this case, I think, this agreement of the secretary was a valid contract, binding upon the company, and that, as the evidence stood at the time the motion to dismiss the complaint was made, the Plaintiff was primâ facie entitled to recover. The Judge, therefore, erred in dismissing the complaint.

The judgment should be reversed, and a new trial ordered.

HUNT, J.—This was an action brought in the Superior Court of the city of New York, by the Plaintiff, as assignee of Mary Entwistle and Charlotte Juipe, to recover for a loss by fire. In April, 1856, Charlotte Juipe, who was the owner of the property insured, sent her husband, A. H. Juipe, to New York, to procure an insurance upon the property, and gave him the money with which to pay the premium. He applied to the Stuyvesant Insurance Company, informed them that the property was his wife's, that she wanted it insured for $4,000, and that she had sent him with $50 to get the insurance. The company accepted the risk, and received the money; the policy was to be afterward delivered. The next day one Burnett, who was an insurance broker both for the Stuyvesant Company and the Defendants, and in the employ of both for the purpose of procuring applications and negotiating policies, and who acted for the Defendants in this respect in procuring the insurance in question, made a survey of this property, at the request of the Stuyvesant Company. Burnett knew that the property was owned by Mrs. Juipe, and on this occasion was informed that the insurance was desired for her, as both Mr. and Mrs. Juipe testified. Burnett testified that Juipe said he wished the insurance in his own name. Before the policy was issued, Burnett, with the assent of the Stuyvesant Company, informed the Defendants of the application, who agreed to take half the risk, and paid Burnett for procuring the insurance. The name of the person insured was written " A. H. Juipe," in both policies. About a week elapsed before the delivery of the policy. The Juipes were Germans, and ignorant. On the 7th of No-

vember the error in the policies was discovered, and a clerk was sent from the office of an attorney to inform the companies of the error, and to procure a memorandum of correction, and that the loss was to be payable to the mortgagee named. In the case of the Stuyvesant Company, the memorandum was correctly made. Upon the policy of the Defendants, the memorandum was made in these words: " Nov. 7, '56, loss, if any, payable to Mary Entwistle." The evidence was uncontradicted that the company was at the time informed of the error in the name of the party insured. On the 24th of December, the property was destroyed by fire. Afterwards, Charlotte Juipe assigned all her interest in the policy to Mary Entwistle, and the latter assigned to the Plaintiff. At the close of the testimony, the Defendant moved for a nonsuit, which was granted, and the judgment thereon was affirmed at the General Term of the First District. The Plaintiff appeals to this Court.

I think this judgment is erroneous. Mrs. Juipe paid to the Defendants her money for an insurance upon her property. The Defendants received her money, intending so to insure her, and supposing they had insured her to the amount of $2,100. If they had any knowledge of the error, and intended to receive or to retain her money, allowing her to suppose that she had a valid insurance, when they understood it to be otherwise, they were guilty of a fraud which will afford them no protection. That the mistake of the name was a mere mistake, and that it was the mistake of the Defendant's agent, Burnett, was proven by the testimony of both Mr. and Mrs. Juipe. On a nonsuit, all disputed facts are to be assumed in favor of the Plaintiff. This is, therefore, to be assumed as the true state of the case. Burnett knew that the property was that of Mrs. Juipe, and was informed, while examining the same on behalf of the Defendants, that the insurance was desired in the name of Mrs. Juipe. The Defendants knew, not only what the property was, its nature and character, but knew who made the application, and who was the party desiring the insurance. The knowledge of their agent was the knowledge of the Defendants (McEwen *v.* Montg. Co. Ins. Co.,

5 Hill, 101; Masters *v.* Mad. Co. Ins. Co., 11 Barb. 624; Bunton *v.* Orient Ins. Co., 8 Bosw. 448; aff'd, Ct. of Appeals, not reported). I think all these circumstances establish a contract on the part of the Defendants with Mrs. Juipe, and that ·if the property had been destroyed, intermediate the receipt of their portion of the premium by the Defendants, and the issuing of their policy, the Defendants would have been liable to her for the $2,100. The evidence of Mr. Juipe, who testifies that he made the application to the company in that form, and of Mr. and Mrs. Juipe, who testify that they so informed the Defendant's agent while he was examining the premises, and the retention of the money by the Defendants with that knowledge, gave all the essentials of a valid contract of insurance in favor of the party so applying and paying (Kelley *v.* The Com. Ins. Co., 10 Bosw. 82; Whittaker *v.* Farmers' Ins. Co., 29 Barb. 312; Angell on Ins., § 35, and cases cited; Johnson *v.* Talman, in Court of Appeals, not reported).

The transaction which took place when the error was discovered, I think also relieves the case from its difficulty. It is not pretended that there was any error in the character of the risk, the amount of the premium, or, at that time, in the name of the individual to be insured. The Defendants were distinctly informed that there was an error in the name of the party insured; that it should be Charlotte Juipe, instead of A. H. Juipe; that the former was the owner of the property; and· they were desired to correct it, or to make a suitable memorandum upon the subject. They made a memorandum, consenting to the assignment desired, but containing nothing on the subject of the erroneous name of the person insured, and handed back the policy. It was distinctly proven that they were informed of the error at this time. What was the intention, and what was the legal effect of this return of the policy, with a consent endorsed that the loss should be paid to Mary Entwistle? The intent could honestly be no other than to redeliver the policy after this information, and insure anew the property described. If the Defendants can be supposed to have reasoned with themselves that

there was an error, we will say nothing about it, we will keep the premium and avoid a liability if a loss should occur, the well-settled principles of law and morality would compel the indemnity to the party claiming.  The Defendants will be compelled to perform the contract, as they allowed the other party to understand it, and to suppose that they understood it.  I doubt not that the intention of the Defendants, in returning the policy to Mrs. Juipe's agent, uncorrected, after being advised of the error, was to reissue and redeliver the same, disregarding the error, and such was its legal effect.  The act of the Defendants was either a trick, unworthy of a respectable company, or it was a statement to Mrs. Juipe that she might regard her policy as valid notwithstanding the error, and that if any loss occurred, it should be paid to Mrs. Entwistle in the same manner as if the correct name were there inserted.  On this point the argument in the Court below was to the effect that these acts were only proof, either that the Defendants did not understand that any request was made to them to alter the policy, or if they did so understand it, they refused it, as they had a right to do.  The evidence was distinct that the request was made to the secretary of the company, and there was no pretence, in fact, that it was not understood.  If the secretary had so testified, a question would have been presented for the consideration of the jury, and, if they had found with the Defendants on that question, it would have ended the point.  Neither is it just to say that if they did understand it the company refused the request to make the alteration, as they had a right to do.  On the contrary, they assumed to grant it, allowed and induced the assured to understand that the matter was entirely satisfactory to them, and never intimated a refusal or dissatisfaction, until called upon to make good the loss.  If they had refused the correction, the assured could have supplied the want of a new insurance.  They did not, however, refuse, and cannot now justify themselves on that ground.

I think a new trial should be ordered.

Reversed.                                 JOEL TIFFANY,
                                              State Reporter.