PATRICK TIERNEY, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

A railroad corporation, on receiving perishable property for transportation and payment of freight, is bound to forward it immediately to its destination ; if it has not the means of transportation it is its duty to refuse to receive the property.    (§ 36, chap. 140, Laws of 1850.)

In the absence of a legal excuse, therefore, it is answerable for any delay beyond the time ordinarily required for transportation over its road.

Plaintiff on January 6th, 1873, delivered to, and loaded upon one of defendant's cars, at Albany, a car load of cabbages for transportation to New York, and paid freight thereon.    On the car was placed a placard, signed by defendant's general freight agent, containing the following : " Perishable property ; this car must run to New York by first train."    A way bill was delivered to plaintiff, showing shipment from Albany January 7th.    The car left Albany and arrived at East Albany at 10.40 P. M. of that day, at 10.50 a freight train started thence for New York ; this car remained until 3.20 P. M. of January 9th, when it proceeded to New York.    On arrival the cabbages were found to be frozen.    The usual time required for a freight train to go from Albany to New York is from ten to eleven hours.    In an action to recover for the loss, it appeared that

if the cabbages had been delivered in the ordinary course of business, they would not have been frozen. Defendant's evidence tended to show that the car, on its arrival at East Albany, was switched onto a side track and blocked up by cars subsequently arriving, so that it could not be moved until they were sent forward. It did not appear that any sudden emergency arose, interfering with the ordinary use of the road, or that the amount of freight was unusual, or exceeded the capacity of defendant to remove it, or that the freight sent forward after the car arrived were made up of freight received before. *Held*, that the facts justified a verdict for plaintiff.

*Wilbert* v. *N. Y. and E. R. Co.* (12 N. Y., 245), distinguished.

The court charged, in substance, that it was the duty of defendant to transport the cabbages by the first train, unless a reasonable and proper excuse for the delay was shown, unless there was such a pressure of property of a similar kind which arrived before as to make it impossible; that if there was a pressure of freight this car should have been forwarded before forwarding ordinary non-perishable property. *Held*, no error.

*It seems*, that where two kinds of property, one perishable and the other not, are delivered to a carrier at the same time by different owners for transportation, and he is unable to carry all, he may, and it is his duty, to give preference to that which is perishable.

*It seems*, also, that where freight has so accumulated as to require the carrier to give priority of one kind over another, it is his duty to give the priority to perishable freight over non-perishable, although the latter was first received.

(Argued January 29, 1879; decided March 18, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Mem. of decision below, 10 Hun, 569.)

This action was brought to recover damages to a car load of cabbages, delivered to defendant for transportation, alleged to have been sustained through the negligence of the defendant in not forwarding in due time.

The facts appear sufficiently in the opinion.

*Samuel Hand*, for appellant. The plaintiff was guilty of negligence in failing to take proper precautions to protect his property. (*Hamilton* v. *McPherson*, 28 N. Y., 72.) Defendant incurred no liability by reason of its inability to transport all the freight offered immediately on delivery; it was bound to transport plaintiff's property within a reason-

able time.    (*Wibert* v. *N. Y. and Erie R. R.*, 1 Kern., 245,
249 ; *Swetland* v. *Beard*, 26 N. Y., 85 ; *Randall* v. *Lynch*,
2 Camp., 352 ; *Galena R. R.* v. *Roe*, 8 Ill., 488 ; *East
Ten. R. R.* v. *Nelson*, 1 Coldw., 272 ; *Ballentine* v. *N. M.
R. R. Co.*, 40 Mo., 491 ; *Taylor* v. *G. W. Railway*, Law
Rep. [1 C. P.], 385 ; *Kenney* v. *Grand Trunk Railway*, 59
Barb., ; 47 N. Y., 525.)    It was error to charge that
because there was a pressure of other non-perishable freight
there was not an excuse for delay in forwarding plaintiff's
freight.    (102 Mass., 278.)

*A. J. Colvin*, for respondent.    In receiving and under-
taking to transport the cabbages to New York for fifty dol-
lars, prepaid, the defendant incurred the duties of a common
carrier in regard to it.    (*Gould* v. *Hill*, 2 Hill, 623 ; *Hol-
lister* v. *Nowlan*, 19 Wend., 234 ; *Cole* v. *Goodwin*, id.,
251 ; *Farmers and Mechanics' Bank* v. *Champ. Trans. Co.*,
23 Vt., 186, 203–204 ; *Hooper* v. *Wells, Fargo and Co.*,
5 Am. Law Reg. [N. S.], 16, Sup. Ct., Cal. ; *Merritt* v.
*Earle*, 29 N. Y., 117, 122 ; Story on Bail., § 571 ; Redfield
on Carriers, § 156 ; 2 Redfield on Railways, ch. 26, p. 4 ;
*Wild* v. *Pickford*, 8 M. & W., 416 ; *New Jersey Steamboat
Co.* v. *Merch. Bank*, 6 How. [U. S.], 344.)    It is negligence
to omit any precaution consistent with the main purpose and
limited powers of a carrier, and required by the nature of
the thing carried.    (*Peck* v. *Wells*, 34 Conn., 132, 145 ;
*Wing* v. *N. Y. and Erie R. Co.*, I Hilt., 243 ; *L. C. and
L. R. R. Co.*, v. *Hodges*, 13 Am. L. R. [N. S.], 145.)    The
contracts of common carriers are made up not only of the
conventional arrangements of the parties, but filled out and
completed by the established laws and known usages, cus-
toms and course of business in which they are engaged.
*St. John* v. *Van Santvoord*, 25 Wend., 666 ; *Van Santvoord* v.
*St. John*, 6 Hill, 157; 23 Vt., 186, 211, 212; 21 Geo., 526.)

DANFORTH, J.    On receiving the cabbages in question
and payment of freight the defendants were bound to for.

ward them immediately to their destination ; — such was the duty of a carrier of goods at common law, for if he had not the means of transportation he might refuse to receive the goods, and such is the duty of a railroad corporation. This is so under the statute.  By its terms the corporation is required to furnish " accommodations " only for such property as shall be offered a reasonable time before the arrival of the time fixed by public notice for the starting of its trains.  (Laws of 1850, chap. 140, § 36.)  And in the absence of a legal excuse the carrier is answerable for any delay beyond the time ordinarily required for transportation by the kind of conveyance which he uses.  (*Blackstock* v. *N. Y. and Erie R. R. Co.*, 20 N. Y., 48 ; *Mann* v. *Burchard*, 40 Vt., 326 ; *Illinois C. R. R. Co.* v. *McClennan*, 54 Ill., 58.)

It is claimed by the plaintiff and scarcly denied by the defendant that delay did occur beyond the usual time of transportation, and the jury found by their verdict that if the cabbages had been delivered by the carrier in the ordinary course of business, they would not have been frozen. This was the injury complained of.  The defendant insists however that there was good excuse for the delay, and this presents the principal question for our determination.

The plaintiff applied to the defendant's freight agent in Albany on the 6th of January, 1873, for transportation for his cabbages from Albany to New York, paid therefor the sum of fifty dollars, and finished loading the car by about five o'clock in the afternoon.  The defendant then placed upon the car a placard upon which was printed " Perishable property, this car must be run to New York by first train ; in case of accident or defect of car, reload and forward at once."  This bore the signature of the general freight agent of the defendant and was seen by the plaintiff. A way bill or receipt was made out and delivered to the plaintiff showing shipment of the property in question from "Albany to Twenty-third street, New York, January 7, 1873."  At 7 P. M. of that day the car was attached to a

locomotive, and put in motion. It reached East Albany at 10.40 in the evening of that day and remained there until twenty minutes past three in the afternoon of January 9th, when it was again started for New York. The distance to that place was shown to be 144 miles, and the usual time allowed for a freight train to pass over it was from ten to eleven hours. This delay unexplained entitled the plaintiff to recover such damages as he incurred therefrom. (*Blackstock* v. *N. Y. and Erie R. R. Co.*, 20 N. Y., 48 ; *Mann* v. *Burchard*, 40 Vt., 326 ; *Illinois C. R. R. Co.* v. *McClennan*, 54 Ill., 58.) And the burden was on the defendant to show a legal excuse if it had one. (*Harris* v. *N. Ind. R. R. Co.*, 20 N. Y., 232, 239.) It sought to establish one, and for that purpose called from East Albany a freight agent whose examination was as follows : " Q. What was the condition of business on the 5th, 6th, 7th and 8th of January, 1873 ?" "A. We were very busy at that time ; we were receiving on some days more cars than we could forward on the same day." He said, " this car reached East Albany at 10:40 p. m. and at 10:50 p. m. a train of thirty-five freight cars started for New York." " Q. How do you account for the fact that this car was kept until 3:20 of the 9th ? " "A. Accumulation of freight ; those locals from Albany, they are backed in on tracks which hold seventy or eighty-five cars ; sometimes a car would be put in and a train backed in after them ; in working out our cars we might get out part of the cars and a train come in from Albany, and to get it off the main track we would have to put it on the side track and block in what were in there." " Q. How can you account for the fact that this car which was marked perishable freight was not sent earlier ? " "A. *Because we could not get at it.*" " By the Court : Before starting out that train at 10:50 that night did you cause an examination to be made whether there were any cars of perishable property at East Albany ? No, I don't know that we did."

Q. Did you look to see whether this car, marked perishable property, was there ? A. I don't know that we did ;

no, it is not customary." On further examination by defendant's counsel : " Q. Your custom was to forward perishable freight by the first train, unless it was so located you could not get at it ? A. We gave it the preference as we could get at it." Where this car, was he could not say, " whether handy or unhandy to be got out." On the 8th twelve freight trains were made up at East Albany for New York. There were eighteen tracks in the yard.

" Q. What was the condition of those tracks the 7th and 8th of January, 1873 ? A. Our yard was full of cars both day and night."

" Q. What cars were you obliged to take ? A. Just as they came in, in order to avoid having the yard blocked up by those coming up." I have thus extracted all the testimony bearing upon the point under discussion, and this would not warrant a finding, either that the amount of freight was unusual or that it exceeded the capacity of the defendant to remove it, or that its trains on the night of the 7th or at any time before 3:20 in the afternoon of the 9th were made up of freight received before the cabbages, and certainly none that the defendant ran as many freight trains as could be run with safety. At most it tends to show that it was not altogether convenient to remove the car, or that the arrangement of tracks was such that the use of one interfered with the other. Indeed it would seem that the backing in of late arrivals had so blocked up the track that the trains last in were first sent out. No fact is stated which would permit a jury to find that a sudden and great emergency had arisen to interfere with the ordinary use of the road or prevent the despatch of the cabbages so that they should arrive at their destination within the usual time after they were received by the defendant. What was the condition of the road ? How was it equipped ? Was the freight received greater than usual or was it unexpected ? These questions cannot be answered from the evidence. The statute was not complied with ; there was not only no notice of the time of starting trains ; there was no regular time to start

them, no time table.    There is no evidence that the defendant had furnished sufficient accommodation for transportation of such freight as was ordinarily offered, nor that the pressure and accumulation was not attributable to its own default or to causes entirely within its own control.    The utmost that the evidence shows, is that the defendant was busy, or that the freight in question would have gone on earlier except that for some unexplained cause the car containing it was placed out of sight and so forgotten.

We have not omitted to examine the cases to which our attention has been called by the learned counsel for the appellant. *Wibert* v. *N. Y. and Erie R. W. Co.* (12 N. Y., 245) has been especially relied upon by him.    Its authority will not be impaired or questioned by sustaining the judgment in this action.    In that case the defendant was excused from the consequences of a late delivery because it was without fault, for it was found by the referee that it had provided sufficient cars and engines and sent forward as many trains as *safety would permit*, but owing to an unusual demand for transportation the plaintiff's property could not be sent forward faster than it was sent.    (*Blackstock* v. *N. Y. and Erie R. R. Co.*, 1 Bosw., 77; S. C., 20 N. Y., 50.)    In coming to that conclusion the court considers the effect of § 36 *of the railroad act of* 1850 ; and says, in the absence of any cause for delay the freight should be sent immediately forward and then holds that the delay complained of was excused by the facts above stated.    These facts do not exist in this case, and the court submitted it to the jury in a manner more favorable to the defendant than it was entitled to.

None of the exceptions to the charge were well taken. The learned trial judge instructed the jury " that it was the duty of the defendant to transport the property in question to New York by the first train, unless a reasonable and proper excuse for the delay is shown."    To this there was an exception ; " and in case there was a pressure of freight cars, the car in question should be forwarded before forwarding ordinary non-perishable property."    " They made this con-

tract in regard to perishable property, and it was their duty to forward it by the first train, unless there was such a pressure upon them of property of a similar kind to be transported, and which had arrived before this, to make it impossible," and again he says, " it would be a good excuse if there was a pressure of a similar kind of property to be forwarded, but it would not be an excuse if there was a pressure of other non-perishable property to be forwarded." To this defendant excepted.

The defendant's counsel requested the judge to charge "that defendant is not liable for delay, if such delay was caused by an unusual press of business, and an accumulation of cars beyond the ordinary capacity of the road," and the judge replied, " within the limitations I have now given, I so charge "— to this qualification there was an exception. It will be seen that the attention of the trial court was not called to the question of right of priority to transportation among freights received at different times. The whole charge is applicable to property received at the same time, and does not necessarily, nor by any fair implication direct a discrimination in favor of perishable property received after non-perishable ; no request to charge in regard to it was made ; the testimony did not indicate when the property was received which was sent forward on the eighth and on the ninth before 3.20 in the afternoon. The plaintiff's car left Albany at seven, and to make the question available to the defendant the judge should have been asked to direct the jury in regard to it. (*Elwood* v. *W. U. Tel. Co.*, 45 N. Y., 549.) I do not think that the question is before us, nor indeed that the evidence was sufficient to raise it in the trial court. The case as presented is that of freight at East Albany ; when it, except that of the plaintiff's, reached there does not appear. It was all in the possession and control of the defendant at one and the same time. But if the charge of the trial judge is construed as instructing the jury that the pressure of non-perishable property should not excuse the delay, I am of the opinion that he was right and the principle of law enunciated by him, sound.

*Wibert's Case, supra*, is not to the contrary. There the question was not presented as to the duty of a carrier to discriminate in favor of perishable freight over non-perishable. That decision therefore should not control this case. It is itself placed upon a qualification to the peremptory direction of the statute, and while it should· be followed in similar cases, is not to be extended. The distinction suggested by the charge exists. In *Cope* v. *Cordova* (1 Rawle, 203), the court while holding that the liability of the carrier by vessel ceases when he lands the goods at a proper wharf, adds " it is beside the question to say that perishable articles may be landed at improper times to the great damage of the consignee,— when such special cases arise they will be decided on their own circumstances." Such a case was presented to this court in *McAndrew* v. *Whitlock* (52 N. Y., 40), where a carrier · was held liable for the loss of certain perishable property, licorice, under circumstances which would have exonerated him from liability if it had not been perishable. In *Marshall* v. *N. Y. C. R. R. Co.* (45 Barb., 502 ; affirmed by this court 48 N. Y., 660), it was held by the Supreme Court that where two kinds of property, one perishable and the other not, are delivered to a carrier at the same time by different owners for transportation and he is unable to carry all the property, he may give preference and it is his duty to do so, to that which is perishable. In this court the case turned upon other points, but referring to the rule above stated HUNT, J., says, " the principle laid down is a sound one and in a proper case would I think be held to be the law. It is not here important."

The rule is a correct one and is equally applicable to the duty of the carrier in whose hands freight has so accumulated that he must give priority to one kind over another.

In requiring the defendant to receive all kinds of property, including perishable, the statute may be construed as imposing upon it such obligations and duties as are required for the proper and safe carriage of that kind of

goods. In that respect assimilating a railway corporation to a common carrier, bound by the obligations of the common law to carry safely and immediately the goods intrusted to him—having in the exercise of care, speed and priority of transportation some reference to the natural qualities of the article and the effect upon it of exposure to the elements. (*McAndrew* v. *Whitlock*, 52 N. Y., 40; *Marshall* v. *N. Y. C. R. R. Co.*, 48 id., 660; *Peet* v. *Chicago and N. W. R. R. Co.*, 20 Wis., 594.) We may also take into consideration the fact that the freight in question was not only perishable but was known to be so by both parties and was shipped as such and with knowledge on the plaintiff's part of the custom of the defendant to give a preference in transportation to such goods, and the parties, though silent, may be regarded as adopting the custom as part of the contract. *Cooper* v. *Kane*, 19 Wend., 386; *Peet* v. *Chicago and N. W. R. R. Co.*, 20 Wis., 598.

In such a case the pressure of other property non-perishable should furnish the defendant no excuse. It knew the condition of its tracks and its ability or inability to move the freight on hand, but the plaintiff knew neither of these things. When the cabbages were delivered to the defendant its agents were well aware of the hazard to which the property would be exposed by delay; they knew that the plaintiff expected it to go forward at once, and they received it not as warehousemen to store, but as carriers to transport; they were not bound to receive it until a reasonable time before the time fixed by public notice for the starting of a train, at which time the statute declares they shall furnish sufficient accommodation for its transportation and assumes that they will then be ready to forward it. (*Faulkner* v. *S. P. R. Co.*, 5 Mo., 311.) Its reception was therefore in itself an assurance to the plaintiff that it should at once and without delay be sent to its destination. The defendant took the property from out of the plaintiff's keeping, received his money for transportation, and by these acts took upon itself the risks of detention, and thereby

undertook to make good all damages which were the natural and necessary consequence of unreasonable delay ; as much so as if it had executed an express contract to that effect. In determining whether there was or not such delay the character of the freight offered may well be taken into consideration. If, as is suggested in the *Wibert Case*, " the owner of property destined to a market may always be presumed to desire its arrival at the earliest practicable time," and therefore the carrier should in the absence of any cause for delay, send it immediately forward, it would seem that the carrier, receiving more property than he could at once transport, some of which from natural causes or the action of the elements may be deemed perishable, should give such property a preference in transportation over other property in his hands. In no other way could its delivery in a reasonable time be assured. The very receipt of the property in question, under the circumstances adverted to, imposed a duty upon the defendant to forward it at once and for the damages occasioned by its default the plaintiff is entitled to recover. Doubtless the defendant, as was lawful, measured the compensation it should receive in part by the hazard it incurred and the extra care and diligence imposed upon it by the fact that the articles were perishable. The obligation would not have been other or different had there been an express agreement. Of the carrier Lord COKE says : " He hath his hire and thereby impliedly undertaketh the safe delivery of the goods delivered to him," and in *Hollister* v. *Nowlen* (19 Wend., 238), the court say : " The carrier may no doubt demand a reward proportioned to the services and the risk he incurs, and having taken it he is treated as an insurer and bound to the safe delivery of the property. But the extent of his liability does not depend on the terms of his contract. It is declared by law." Again : " It is not the form of the compact but the policy of the law which determines the extent of the carrier's liability."

If we assume then that there was evidence in the case tending to exonerate the defendant, it was submitted to the

jury with proper instructions and the judgment appealed from should be affirmed.

CHURCH, Ch. J., MILLER and EARL, JJ., concur; FOLGER, RAPALLO and ANDREWS, JJ., dissent.

Judgment affirmed.