ASHLEY K. NORTHRUP *et al.*, Appellants, *v.* THE MISSISSIPPI VALLEY INSURANCE COMPANY, Respondent.

1. *Insurance companies, fire — Indorsements by secretary and president, effect of.*—The acting secretary of an insurance company indorsed on a policy issued on certain property which had been sold to A. prior to the expiration of the policy, "Loss, if any, payable to A." The president further indorsed: "This policy is hereby changed to cover chairs and benches, instead of the museum collection, which is removed." *Held*, that the indorsements constituted valid contracts of insurance, and that the company was liable thereon.

2. *Insurance companies, fire — Admissions by officers, effect of.*—A corporation acts through its officers, and the admissions of such officers, made in the execution of the duties imposed upon them and concerning a matter upon which they are called upon to act, and which matter is within the scope of the authority usually exercised by them, are evidence against the corporation.

3. *Insurance, fire — Declarations of president — Res gestæ.*—In suit on a fire insurance policy the declaration of the president, at a time when claims for the losses were presented to him for settlement, that he would pay if other companies would, was evidence against the company as a part of the *res gestæ.*

4. *Practice, civil — Pleadings — Answer — New matter must be set forth in pleadings.*—Under the old system of pleading the general issue, everything was open to proof which went to show a valid defense; but under the present practice act (Wagn. Stat. 1015, § 12), if defendant intends to rest his defense upon any fact which is not included in the allegations necessary to the support of the plaintiff's case, he must set it out according to the statute, in ordinary and concise language; otherwise he will be precluded from giving evidence of it at the trial.

| | |
|---|---|
| 47 | 435 |
| 32a | 680 |
| 47 | 435 |
| 36a | 645 |
| 38a | 104 |
| 38a | 128 |
| 47 | 435 |
| 101 | 30 |
| 47 | 435 |
| 104 | 361 |
| 47 | 435 |
| 46a | 261 |
| 47a | 95 |
| 47 | 435 |
| 48a | 197 |
| 48a | 209 |
| 48a | 461 |
| 47 | 435 |
| 50a | 513 |
| 47 | 435 |
| 55a | 575 |
| 47 | 435 |
| 57a | 461 |
| 58a | 80 |
| 60a | 608 |
| 47 | 435 |
| 62a | 244 |
| 47 | 435 |
| 42a | 373 |
| 42a | 376 |
| 42a | 668 |
| 43a | 512 |
| 43a | 557 |
| 47 | 435 |
| 66a | 391 |
| 47 | 435 |
| 142 | 302 |
| 47 | 435 |
| 77a | 94 |
| 47 | 435 |
| 81a | 311 |
| o81a | 518 |
| 47 | 435 |
| f86a | 615 |
| 47 | 435 |
| f87a | 60 |
| 87a | 281 |
| 47 | 435 |
| 163 | 448 |
| 163 | 519 |

Northrup et al. v. The Mississippi Valley Ins. Co.

*Appeal from St. Louis Circuit Court.*

*Sharp & Broadhead*, and *J. F. Smith*, for appellants.

*Cline, Jamison & Day*, for respondent, among other points, contended that the indorsement on the policy, "Loss, if any, payable to Northrup," etc., by the clerk of defendant, did not amount to a renewal of the policy to plaintiffs. The clerk had no power to make a new policy, and could not make a substitution amounting to a renewal. (42 Mo. 374.) There was error in the action at Special Term, and the reversal by General Term was proper.

WAGNER, Judge, delivered the opinion of the court.

The material facts in this case appear to be these : In the month of October, 1866, respondent issued two policies of insurance to the St. Louis Museum, Opera and Fine Art Gallery Association : one for $2,500 upon the "theatre part" of the building known as the St. Louis Museum and Opera House, the other for the same amount "on museum collections contained in museum part" of the building. The rate of premium charged and paid on each of the policies was three per cent., and on each was the written entry made at the time of issuing the policy, "notice of other insurance waived until required." By the terms of the policies the respondent insured the property for one year against loss or damage by fire. The policies contained nothing in regard to the manner or form in which the companies could make contracts of insurance, nor by what officers they should be made ; nor was there anything said in them in regard to applications for insurance on property within the limits of the city of St. Louis, though a printed clause provided that "applications for insurance on property out of the city should be in writing."

There were no conditions or provisions regarding the sale of the property insured, but there were two printed clauses in reference to an assignment of the policies as follows : "The interest of the insured in this policy is not assignable unless by consent of this corporation manifested in writing, and in case of any transfer or termination of the interest of the insured, either by

sale or otherwise, without such consent, this policy shall from henceforth be void and of no effect." Also, "the interest of the insured in this policy is not assignable unless the assignee, before any loss happens, shall give notice in writing of the assignment to this company, in order to have the same indorsed on or annexed to this policy; and this company, when so notified, may elect either to continue the insurance, and express the same by indorsement on this policy, or refund a ratable proportion of the premium for the time of the risk unexpired, and cancel the policy."

In March, 1867, before the expiration of the policies, the property insured was sold under a deed of trust, and at the sale R. F. Lamb and the appellants purchased the same. Lamb, who was president of the association, and in whose possession the policies were, took them to one Brawner, an insurance broker, told him of the sale to himself and appellants, and instructed him to get the property insured to them as the owners. Brawner gave the respondent written and verbal notice of these facts, and applied to it for insurance to Lamb and appellants on the property. He sent the written notices, together with the policies, to respondent's office by his book-keeper, and after a day or two had elapsed respondent returned the policies to Brawner with the written entry on the face of each one, "Loss, if any, payable to R. F. Lamb, A. K. Northrup and A. Boeckler." Brawner then gave the policies to Northrup. About two weeks after Brawner had delivered the policies to Northrup with these written entries on them, the museum collection was sold, and the policy on it was sent to respondent's office with a request that it might be changed to cover chairs, benches and furnaces, as the museum collection was removed from the building. The policy was handed to and the request made of Jennings, the president and managing officer of the company, who then made this additional entry in writing on the face of the policy:

"This policy is hereby changed to cover chairs, benches and furnaces, instead of museum collection, which is removed.

WM. H. JENNINGS, President."

In July, 1867, the building and the chairs, benches and furnaces were totally destroyed by fire. Notice of loss was immediately

given to respondent and proof of loss furnished. Jennings, the president, in conversation with Lamb and Northrup, told them that the entry, "Loss, if any, payable," etc., "was all right;" if other companies paid, he would. It seems it was then supposed that the building was set on fire, and resistance to payment was intended on that ground, but no objection was made to the policy or the indorsements. After the loss occurred, Lamb assigned all his interest in the claim for the loss to the appellants. Respondent failing to pay, the appellants brought this suit, setting out the terms and conditions of the policies and the indorsements thereon, with an averment that the appellants complied with all the conditions of the policies and furnished notice and proof of loss.

The answer of the respondent admits that it issued the policies to the St. Louis Museum, Opera House and Fine Art Gallery Association, as charged in the petition, but denies that it had notice of any assignment of the property to appellants and Lamb, and denies that it ever agreed to insure appellants and said Lamb upon the same terms and conditions of said policy as charged in said petition, or that it ever received any application from appellants for any such insurance, or any consideration or premium therefor, or that it agreed for the unearned premium to insure appellants and said Lamb. It further denied that it agreed, in writing, to pay the loss, if any, to Lamb and appellants, but alleged that the policy became void before any loss occurred, by reason of the sale and transfer of the interest of the Museum Association without the knowledge or consent of the respondent manifested in writing, as required by the terms of the policies, and that by reason thereof the same was void and not binding. After pleading to the counts of the petition, the answer made a general averment that, when the risk was taken and the policies issued, the museum was conducted in a quiet and orderly manner, so as to make it a safe risk, and afterward it was occupied in such a way as to make it more hazardous, and that in consequence thereof the policies became void.

The answer does not deny the power and authority of the person who made the entry on the policies, "Loss, if any, payable to R. F. Lamb, A. K. Northrup and A. Boeckler," to bind respondent

in any manner or by any contract he might choose to make. The indorsements or entries were made by Cornish, who was the secretary *pro tem.* in charge of the office, and afterward expressly approved by Jennings, the president. There was no charter or by-law pleaded showing any restraint or prescribed condition for making or indorsing policies, nor was there anything set up to show an excess of authority on the part of the officers.

Upon the case as thus substantially made, the Circuit Court, at Special Term, found for the appellants. This judgment was reversed in General Term, and an appeal was taken. The question now is, under these circumstances can the respondents be held liable ?

In the absence of any explicit prohibitions from making parol contracts contained in the charter and by-laws, corporations, like natural persons, may make parol contracts. Indeed, by the whole course of decisions in this country, corporations, in their contracts, are placed upon the same footing with natural persons, open to the same implication, and receiving the benefit of the same presumptions. (Ang. & Ames on Corp., § 240.)

In the case of Henning & Woodruff v. The United States Ins. Co., *ante*, p. 425, we held that " corporations, where they are not restrained in any particular manner by their charter, may adopt all reasonable modes in the execution of their business, which a natural person may adopt in the exercise of similar powers. The business of insurance is not strictly a corporate franchise ; any person may engage in it unless forbidden by law ; and where a private person engages in it, his parol contracts will bind him the same as in any other business."

Cornish, the clerk and acting secretary, was in charge of the office and acting for the company, and when the policies were returned with the entries written thereon, " Loss, if any, payable to Lamb, Northrup and Boeckler," the parties had a right to presume that it was done by rightful authority. Jennings, the president, who it appears had full power to act, admitted that the contract was a valid one, before the loss, by making a further and additional entry on one of the policies, and, after the loss, by telling both Lamb and Northrup that the entry was all right,

and if the other companies paid he would. In this case it is very clear to my mind on the state of the pleadings that the agents were acting within the scope of their general authority, and the company is responsible for their acts in the premises. (Horwitz v. Equitable Ins. Co., 40 Mo. 557 ; Combs v. Hannibal Savings & Ins. Co., 43 Mo. 148 ; Rowley v. Empire Ins. Co., 36 N. Y. 550.)

In Conover v. Mutual Ins. Co., 1 Comst. 290, it was decided that where a policy of insurance prohibited an assignment of the interest of the assured, unless by the consent of the company manifested in writing, and the secretary, on an application to him at the office of the company, indorsed upon the policy and subscribed a consent, his authority to do so, in the absence of evidence to the contrary, was to be presumed. The court in their opinion say : ''Incorporated companies, whose business is necessarily conducted altogether by agents, should be required at their peril to see to it that the officers and agents whom they employ not only know what their powers and duties are, but that they do not habitually and as a part of their system of business transcend those powers. How else are third persons to deal with them with any degree of safety? They can have no access to the by-laws and resolutions of the board, and no means of judging in the particular instance whether the officer is or is not within the prescribed limits."

In Salomes v. The Rutgers Fire Ins. Co., 3 Keyes, 416, the facts were as follows : Charlotte Quisse owned a house and some furniture, occupied and used by her, in Westchester county, upon which she desired insurance for $4,000. She employed her husband to obtain such insurance, and gave him fifty dollars to pay the premium. The husband went to New York and made application to the Stuyvesant Company for the whole amount of the insurance, informing the company that it was to be insured for Charlotte Quisse, who owned the property. The company agreed to make the insurance, and received of him fifty dollars for the premium. The Stuyvesant Company, not wishing to assume the whole risk, applied to the defendant, who agreed to insure $2,100 of the amount. About a week afterward, A. H. Quisse, the

husband, called again, and the Stuyvesant Company gave him two policies upon the property—one for $2,100, executed by the defendant, and one for $1,900, executed by itself—both insuring A. H. Quisse, the husband, instead of Charlotte, the wife. A. H. Quisse did not learn this, but spoke about there being two policies when he expected but one, but was assured that defendant's company was good, and that it was all right, and he took the policies. The mistake in the policies remained undiscovered by Charlotte and A. H. until Charlotte was called upon for additional security for two mortgages given by her, when she took both policies to the attorney of the mortgagees, who at once discovered the error, knowing that the title was in Charlotte, and informed her thereof, at which time she employed him to procure them to be corrected, and authorized him to have, in addition, the losses made payable to the respective mortgagees, the policy in question to Mary Entwistle. The attorney gave the policies to a clerk, to go to the officers and get them arranged in accordance with the wishes of Mrs. Quisse. The clerk proceeded with the policy in question to the defendant's office, and presented the same to defendant's secretary, and informed him that the property in question belonged to Charlotte Quisse, and that she wanted the loss, if any, made payable to Mrs. Mary Entwistle. The secretary indorsed on the policy the loss payable as requested, and returned the policy to the clerk, who received it, supposing it all right. The secretary made no verbal reply to the request of the clerk, and did nothing except as above stated. The property insured was afterward, and during the life of the policy, destroyed by fire; and Charlotte Quisse and Mary Entwistle each assigned their claim to plaintiff, who prosecuted the defendant for the amount insured. Upon these facts the court held that the indorsement of the secretary was a valid contract with Charlotte Quisse, under which the company was liable for loss of the premises by fire.

Grover, J., declared: "It is well settled that an agreement by parol to insure and to make out a policy, where the terms are all understood, is binding upon the insurer, and will be enforced in the courts. In this case I think this agreement of the secretary was a valid contract, binding upon the company."

And Hunt, J., said: "What was the intention, and what was the legal effect of this return of the policy with a consent indorsed that the loss should be paid to Mary Entwistle? The intent could honestly be no other than to re-deliver the policy after this information, and insure anew the property described. If the defendants can be supposed to have reasoned with themselves thus: "Here is an error; we will say nothing about it, we will keep the premium, and avoid a liability if a loss should occur," then the well-settled principles of law and morality would compel the indemnity to the party claiming. The defendants will be compelled to perform the contract as they allowed the other party to understand it and to suppose that they understood it. I doubt not that the intention of the defendants in returning the policy to Mrs. Quisse's agent uncorrected, after being advised of the error, was to re-issue and re-deliver the same, disregarding the error, and such was its legal effect."

So the court in Maryland, speaking on the same question, said that the effect of indorsing the memorandum of insurance on a policy was in effect to make a new contract, subject to the terms and stipulations contained in the policy, except so far as they were varied by the terms of the indorsement. (Com. Ins. Co. v. Cropper, 21 Md. 311.)

The act of the defendants here amounted to an engagement on their part that they would retain the unearned premium and regard the policy as valid, and pay the loss, if any, to the parties designated. It is certain that Lamb, Northrup and Boeckler so understood it, and relied, in consequence thereof, upon the confident belief that they were fully insured. This belief was directly superinduced by the act of the defendant, and to hold now that the contract was ineffective and not obligatory, would be ruling in favor of trickery and deception.

As before indicated in a prior part of this opinion, a corporation acts through its officers; and the admissions of such officers, made in the execution of the duties imposed upon them, and concerning a matter upon which they are called upon to act, and which matter is within the scope of the authority usually exercised by them, are evidence against the corporation. Cornish, as

secretary *pro tem.*, had the unquestioned authority, as was his habit, to make indorsements on policies.   Whether he made them in exact or precise accordance with the rules of the company was not for the insured to inquire.

Mr. Jennings had full and ample power to make contracts and to settle and adjust claims and bind the corporation, and when the matter was presented to him for settlement he was acting in the business of the corporation and within the scope and bounds of his power ; and what, therefore, he said in reference to the indorsement's being all right was said in reference to the subject-matter of the business before him, and is evidence against the corporation as part of the *res gestæ*.   I therefore entertain no doubt about the indorsements constituting valid contracts of insurance, and that the corporation is liable thereon.

An attempt was made to show that the premises were so used that the risk was increased, and that the policy was thereby vitiated.    But the questions asked of the witness were improper, and the evidence rightfully excluded.   The questions tended to elicit no facts.   They did not concern science and skill, and furnished no basis for an examination as an expert.   Whether the property was used in such a way as to render it more hazardous was a question for the determination of the jury, and not a matter resting in the opinion of the witness.

Some other points are now urged, but it is sufficient to say that they were not set up in the answer, and are utterly outside of any issue raised by the pleadings.

The statute provides that the answer of the defendant shall contain : first, a special denial of each material allegation of the petition controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief; second, a statement of any new matter constituting a defense or counter-claim, in ordinary and concise language, without repetition.   (2 Wagn. Stat. 1015, § 12.)

Where new matter is relied upon in defense or in evidence, it must be set out in the answer.   Therefore the grounds taken in reference to a stamp and the keeping of a bar in the premises, are not open as a defense to the defendants, inasmuch as they

were not set forth in their answer. Under the old system, by pleading the general issue everything was open to proof which went to show a valid defense. But the practice act, which has substituted for the general issue an answer, and requires a statement of any new matter constituting a defense, in addition to a special denial of the material allegations of the petition intended to be controverted, has worked a complete and total change in the principles of pleading. The defendant, by merely answering the allegation in the plaintiff's petition, can try only such questions of fact as are necessary to sustain the plaintiff's case. If he intends to rely upon new matter which goes to defeat or avoid the plaintiff's action, he must set forth in clear and precise terms each substantive fact intended to be so relied on. It follows that whenever a defendant intends to rest his defense upon any fact which is not included in the allegations necessary to the support of the plaintiff's case, he must set it out according to the statute, in ordinary and concise language, else he will be precluded from giving evidence of it upon the trial. As the matters alluded to and pressed in the argument were not presented in the answer, and no issue was tendered or joined upon them, they can not be now raised in this court. The result is that the judgment at General Term must be reversed and that at Special Term affirmed. The other judges concur.