CLIFTON WHARTON *et al.*, Respondents, *v.* MISSOURI CAR FOUNDRY COMPANY, Appellant.

1a 577<br>33a 190

### April 10, 1876.

1. It is not competent to show a parol modification of a written contract after its terms have been broken, and without any consideration to support the alleged new agreement.

2. Time is not necessarily of the essence of a contract; and, where goods are to be delivered at a certain date, and are received and retained after the date fixed by the agreement for their delivery, it will be held such an interpretation of the contract, by the act of the party interested, as to work a waiver of the delay.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

*George P. Strong,* for appellant, cited: Davis *v.* Talcott, 12 N. Y. 188; Russell *et al. v.* State Ins. Co., 55 Mo. 592; Brown on Stat. Fr. (3d ed.), secs. 306–308; Mattison *v.* Wescott, 13 Vt. 261; Thompson *v.* Hudson, 4 H. L. Rep. Cas. 16, 17; 3 Ph. on Ev. (4th Am. ed.) 378; Rob-

37

erts on Fr. (2d Am. ed.) 89 ; Brown on Stat. Fr. (3d ed.),
secs. 423, 432, 433, 434 ; 1 Greenl. on Ev. (2d ed.), sec.
304 ; Cummings v. Arnold, 3 Metc. 489, et seq.; Monroe v.
Perkins, 9 Pick. (Mass.) 298 ; Bunce v. Beck, 43 Mo.
280 ; Bailey v. Johnson, 9 Cow. 115 ; Fleming v. Gilbert,
3 Johns. 530 ; Dearborn v. Cross, 7 Cow. 48 ; 3 Ph. on
Ev. (4th Am. ed.) 355, note 940 ; Allen v. Jarvis, 20
Conn. 38 ; Cummings v. Dennett, 26 Me. (13 Shep.) 401 ;
Sewall v. Fitch, 8 Cow. 219 ; 3 Ph. on Ev. (4th Am.
ed.) 365.

Noble & Orrick, for respondents, cited : Eddy v. Baldwin,
32 Mo. 369 ; Green v. Gallaher, 35 Mo. 226 ; Henning v.
United States Ins. Co., 47 Mo. 431 ; Hume v. Taylor, 63
Ill. 43 ; Cummings v. Arnold, 3 Metc. 486 ; Goss v. Lord
Nugent, 5 B. & Ad. 65 ; 3 Ph. on Ev. (4th Am. ed.), secs.
1466, 1467 ; Bunce v. Beck, 43 Mo. 266 ; 12 Wend. 446 ;
13 Pick. (Mass.) 446 ; 4 N. H. 40 ; Stowell v. Robinson, 3
Bing. (N. C.) 928 ; 1 Ph. on Ev. (4th Am. ed.) 559, 561,
562 ; Marshall v. Lynn, 6 M. & W. 109 ; Dole v. Stimpson,
21 Pick. (Mass.) 387 ; Harvey v. Graham, 5 Ad. & E.
73, 74.

BAKEWELL, J., delivered the opinion of the court.

This is a suit for damages for breach of contract. It
appears that plaintiffs, who are manufacturers in Pitts-
burgh, and defendant, which is a corporation engaged in car
building in St. Louis, entered into a written contract, the
terms of which are contained in a letter of proposals dated
November 1, 1872, addressed by defendant to plaintiffs, and
at that date accepted by plaintiffs in writing.

The letter is as follows : " We propose to contract with
you for three hundred tons of bar iron of freight car specifi-
cation, at $4.90 per 100, free from rates, cut to length
where required, delivered in East St. Louis, four months
settlement from date of receipt. One hundred tons to be
delivered in November, and same in December and January."

Plaintiff delivered to defendant, under this contract, 136

tons of bar iron, which were accepted and paid for; of this by far the greater portion was received in November, but a considerable part was not received until during December. Plaintiff claims that the specifications were to be furnished by defendant on the first of every month; that no specifications were ever received, except those sent on November 1; that, the weight of the articles not being given, these specifications amounted to 136 tons, which were all delivered, as before stated, and of which 100 tons were shipped before November 26; that plaintiffs frequently demanded the specifications for December and January, but that defendant refused to furnish them, and refused to allow plaintiffs to carry out their contract; that iron declined in price about $10 or $12 a ton during the months of December and January, and that they were damaged by this breach of contract. Plaintiffs ask in their petition for $3,000 damages.

On the other hand, it is claimed by defendant that the specifications were not to be sent on monthly; that there was a delay in the forwarding of the supply of bars required by the contract to be sent on in December, and that the contract was modified by a parol agreement between defendant and a duly authorized agent of plaintiffs, one Hatry, to the effect that defendant was to receive, and plaintiffs to deliver, the remaining 164 tons before the end of February, for such prices as ruled on February 1st, which defendant says was $4.40 per hundred; that specifications were forwarded to plaintiffs in accordance with this modified agreement, but the iron was never sent on.

Defendant claimed that, by this breach of contract on the part of plaintiffs, he was damaged $1,000.

From letters in evidence it appeared that plaintiffs, on December 5th, wrote to defendant, urging it to send on its specifications and calling attention to the delay; that this letter was received and answered on December 9th, and the specifications promised; that on December 20th defendant wrote to plaintiffs as follows: " Do you not think

it would be to your interest to cancel that part of our contract relating to January? The price of iron has settled materially, and we are now contracting at lower prices, based on decline." On December 24th plaintiffs answered, refusing to cancel.

It is claimed by defendant that after that date the contract was modified by Hatry. Hatry swears that he never made any such modification; that he merely received the proposition, to be sent to his employers, at Pittsburgh, for their action. He also swears that he was the general, and only traveling, agent of plaintiffs, but had no authority to sell below card rates, and had no authority to modify the contract.

Clifton Wharton, one of the plaintiffs, swears to the same thing, and that they refused to modify the contract in any way. In this he is corroborated by letters, his correspondence with defendant showing clearly that he required adherence to the original agreement. There was evidence that Hatry sold iron, collected money, and settled adjustments for plaintiffs, and that they recognized his actions in this respect. Whether, in making adjustments, he acted under instructions, the witness did not know. McWilliam, president of defendant, swears that he made the original contract with Hatry; and that Hatry did not refer to any instructions. Relying upon this evidence as to Hatry's authority as agent of the plaintiffs, and as foundation for evidence of a verbal modification of the contract sued on, between defendant and Hatry, as agent, defendant offered to introduce evidence tending to show that on January 3, 1873, by a verbal agreement between defendant and Hatry, as agent of plaintiffs, the contract sued on was modified, and a new contract, for the same articles of manufacture, at a reduced price, substituted for the one in suit, and that defendant offered to comply with this last agreement, and sent specifications in pursuance thereof, which plaintiffs refused to fill.

To this evidence plaintiffs objected, because said modifications were not in writing.. The objection was sustained, and defendant excepted.

The instructions granted for plaintiffs and defendant, and defendant's instructions refused, are noticed in the body of the opinion.

There was a verdict and judgment for plaintiffs for $1,583.40. A motion for a new trial having been made and overruled, and all exceptions having been duly saved, the case is brought to this court by appeal.

The grounds of error insisted upon for a reversal of this judgment are the ruling out of oral testimony as to the alleged modification of the written contract, and, also, the giving of instructions asked by plaintiffs and the refusal of those asked by defendant.

It is claimed by counsel for respondents that the contract sued on is within the statute of frauds.

We do not so regard it. It would appear to be a contract for goods to be manufactured, blending prices and compensation for work, skill, and material so that they cannot be discriminated.

But we do not regard this as material; the contract was in writing, and the rule that oral evidence cannot be introduced to contradict or vary its terms applies to all written contracts, whether within the statute or not. The question is whether the proposed evidence comes within any of the apparent exceptions which have been made by the courts to this most wholesome rule. The offer was as follows :

"Defendant then offered to prove by this witness that, by a verbal agreement between plaintiffs, by Hatry as agent, and defendant, the contract of November 1, 1872, upon which this suit was brought, was modified, on or about January 3, 1873, and that it was then agreed between the parties that defendant would send specifications for the remainder of the iron in February, and that plaintiffs would deliver it at the same place, of the same character, in the

same time as specified in the contract of November, 1872, at such price as defendant should be able to purchase such iron of other parties on February 1, 1873, and that this agreement was substituted for the contract of 1872, and in lieu thereof. ''

This is not the precise modification of the original contract set up in the answer. But we pass that by.

We do not think that there was evidence that Hatry was authorized to make such a modification of the original contract. We think that he appears to have had no such power, and that it does not appear from the evidence that defendant had any reasonable ground to suppose that he was clothed by plaintiffs with any power in regard to their contracts but that of taking contracts at card prices.

But the evidence was otherwise incompetent. It is not easy to understand how it can, with strict accuracy, be said that a contract is modified after breach. Before breach, it is capable of modification in a legal manner; but after a breach, the performance of the original contract becomes impossible. A new contract may be made, but the old one, for all purposes of performance, is at an end; and, accordingly, the cases of oral modification of written contracts in the books are cases of a modification before breach, whilst performance is still possible.

It is competent, however, in the case of a written contract, whether within the statute or not, to prove a new and distinct agreement, whether as taking the place of the old contract, or supplementary to it; and, if subsequent to and involving the same subject-matter, it is immaterial whether the agreement be entirely oral, or whether it refers to, or adopts in whole or in part, the provisions of the former contract. But in such a case the old contract is entirely abandoned, and the new one must stand entirely on its own bottom, and have a sufficient consideration to support it.

The proposed so-called modification in the case at bar will not do at all. It is a perfectly *nude pact;* no recovery

whatever could be had upon it. What consideration does the appellant attempt to show, moving to respondents? Appellant was to pay money, to be sure, but less than under the old contract. If I agree in writing to sell a man 100 bushels of coal, to be delivered on November 1st, at 15 cents a bushel, and fail to do so, I cannot plead a modification of the contract, and then show as a modified contract an oral agreement to sell him 200 bushels on that date at 20 cents. Yet this seems to be about what the offer of appellant amounts to, and we think it was properly rejected by the trial court.

The Supreme Court of our own State, in the case of *Henning* v. *United States Insurance Company*, 47 Mo. 439, has perhaps gone as far in admitting oral evidence to show a change of the terms of a written contract as any of the courts are disposed to go ; but in that case the offer was to show that both parties subsequently acted on the verbal modification, and the court expressly says that, in case of modification of the terms of the written contract, there must be a sufficient consideration for the new parol agreement.

If respondents in the case at bar had acted upon the alleged new contract, there would have been some analogy between the cases. As they did not, there is none ; and there is neither reason nor authority to support the proposition involved in the offer of the respondents to prove a modification of this contract by parol, after its terms had been broken by them, and without any consideration whatever to support the new agreement.

To permit the introduction of such testimony is to make written contracts worthless, and to put the most careful and the most careless man on a common footing of insecurity. The door for its admission should not be enlarged.

The instructions given by the court seem unexceptionable, and those refused were, in our opinion, properly refused.

The first instruction for plaintiffs directs the jury that the receipt and payment for the iron was a waiver, by defendant,

of delay in delivery. This, under the evidence, was a correct instruction.

No exception was taken to the next instruction asked by plaintiffs.

For defendant the court instructed that a failure to deliver the 300 tons in January invalidated the contract.

Defendant asked seven instructions, which were refused. The first of these submitted to the jury the question of a parol modification of the contract.

The second, third, fourth, fifth, and seventh directed the jury to find for the defendant if plaintiffs had not complied with the contract, leaving out of consideration the waiver by defendant. The sixth instruction asked by defendant told the jury that, if Hatry was general agent of defendant, and exceeded his instructions in modifying the agreement, plaintiffs were bound, unless defendant had notice of the character of his instructions.

We think there was not evidence to show Hatry's power to modify this contract; but in any case, as the whole question of its modification was withdrawn from the jury, this instruction was of course refused.

We see no error in this record to warrant a reversal of the judgment; it is, therefore, affirmed. The other judges concur.