## MEDBURY and others *vs.* THE NEW YORK AND ERIE RAIL ROAD COMPANY.

When an agent is entrusted with authority, within a prescribed sphere of action, and is permitted, from day to day, without any interference on the part of the principal, to exercise the authority, third parties will not be affected by an understanding between the principal and agent, that every act of the agent shall receive the express approval of the principal.

Where the by-laws of a rail road company entrusted the general freight agent with the power of 'negotiating contracts for the transportation of freight, with the approval of the president; *Held* that this restriction should be construed as meaning, subject to the approval of the president, if he, on any occasion, should deem it proper to interpose, before the attempted execution or performance of the contract. But that if he did not think fit to interpose, and neglected to apprise the public that every special contract for the transportation of freight must be ratified by him, the company would be liable for the fulfillment of the contract.

Compensation for the actual loss sustained, is the fundamental principle upon which our law bases the allowance of damages. But it will not make such allowance upon a calculation of speculative profits; nor will it indemnify for remote or indirect losses.

Medbury *v.* New York and Erie Rail Road Company.

The loss must be the natural and proximate consequence of the act; and when this can be ascertained, without uncertainty, the principle of compensation will be adopted.

In an action to recover damages for the non-performance of a contract to transport flour from one place to another, and to deliver the same at the latter place, on or before a specified day, the measure of damages is the difference between the contract price of the flour, had it arrived at the place of delivery on the day specified, and the price for which it was actually sold, in the market, on its arrival.

APPEAL from a judgment for $931.39 in favor of the plaintiffs, entered upon the report of Richard Goodman, Esq. referee. The action was for damages arising from the non-performance, on the part of the defendants, of an alleged contract to transport a certain quantity of flour from Hornellsville, on their rail road, to the city of New York, and to deliver the same at the latter place, on or before the 20th day of February, 1853. The defendants denied the contract. On the trial, Horatio Stevens, a witness for the plaintiffs, testified that he, acting as their agent, made the contract with M. B. Spaulding, the general freight agent of the defendants. It was contended by the defendants that Spaulding had no authority to make such a contract. The referee adopted as the measure of damages, the difference between the contract price of the flour (had it arrived on the 20th of February) and the price it was actually sold for, in the market, on its arrival. The defendants insisted that the amount of damages could not be greater than the difference between the market value on the day it ought to have arrived, and the market value on the day when it did arrive.

*A. C. Bradley,* for the plaintiffs.

*D. B. Eaton,* for the defendants.

*By the Court,* CLERKE, J. It may be quite true that a common carrier is not liable on an implied contract to deliver goods at any specific time. But, like any other person,

he is bound by the terms of his express undertaking, whether entered into directly by himself, or through the intervention of an agent. The only question of which there can be the slightest doubt in this case is, whether Spaulding was authorized to make the contract upon which this action is founded. The referee has found, unhesitatingly, that he did make it; and it is not our custom to disturb any finding or verdict not clearly against the weight of evidence. As to the authority of Spaulding, he was general freight agent, beyond dispute; and the by-laws entrust him with the power of negotiating contracts and arrangements in relation to the transportation of freight, with the approval of the president. So that, if the approval of the president was given to this contract, there could be no doubt of its validity. But is a contract for the transportation of freight on an extensive rail road, where contracts of every kind in relation to freight must be almost innumerable, to fail, because the agent has neglected to present the contract to the president for his approval, or because the president has neglected, or finds it impracticable, to examine, every engagement made by his subordinates, throughout the whole extent of the road? Necessity requires, and the protection of all persons transacting business with a concern of this description requires, that this restriction relative to the approval of the president, should be construed as meaning, subject to his approval, if he, on any occasion, deems it proper to interpose, before the attempted execution or performance of the contract. But, if he does not think proper to interpose, and neglects to apprise the public that every special contract for the transportation of freight must be ratified by him, the company must be then held liable for the fulfillment of the contract. When the agent is entrusted with authority within a prescribed sphere of action, and is permitted, from day to day, without any interference on the part of the principal, to exercise the authority, I do not think that third parties should be affected by an understanding between the principal and agent, that every act to receive

Medbury *v.* New York and Erie Rail Road Company.

the express approval of the principal. But it may be fairly doubted whether any such restriction was intended in the by-laws. Taking into consideration the multiplicity and variety of business on this rail road, it may be well supposed, as I have already intimated, that the restriction meant that the contracts of the superintendent should be subject to the approval of the president, whenever he should deem it prudent to interfere. This view is strengthened by the direction in section 16 of the by-laws, that the chief clerk shall be furnished, by the general freight agent, with copies of all special contracts for transportation of freight. If it was intended that in every instance the contract should receive the express ratification of the president, it is not probable, if in writing, that it would remain in the possession of the agent, but the proper person to transfer it to the chief clerk, would be the president himself, after affixing his consent to it.

We consider the exceptions on the other points equally untenable. The referee adopted the correct rule of damages in cases of this nature. Compensation for the actual loss sustained, is the fundamental principle upon which our law bases the allowance of damages. It will not, indeed, make this allowance upon a calculation of speculative profits; for this would be proceeding upon contingencies, and would involve the subject too much in uncertainty. It would be too difficult for practical application. Nor will the law indemnify for remote or indirect losses. The loss must be the natural and proximate consequence of the act, and when this can be ascertained without uncertainty, the principle of compensation will be adopted. This was clearly ascertainable in the present case.

The judgment should be affirmed, with costs.

[New York General Term, February 1, 1858. *Davies, Clerke* and *Sutherland,* Justices.]