### Euston & Company, Defendant in Error, v. Erie Railroad Company, Plaintiff in Error.

### Gen. No. 14,416.

1. COMMON CARRIERS—*when liable for through transportation.* *Held,* that the carrier in this case by virtue of the bill of lading in evidence and by the acceptance of the merchandise in question, became liable beyond its terminal point and to the point of destination.

2. MEASURE OF DAMAGES—*in action against carrier for failure to deliver in reasonable time.* For the failure of a common carrier to deliver merchandise at its destination in a reasonable time, the true measure of damages is the difference between the value of the goods at the time they should have been delivered and the value when they were delivered. If the goods are forwarded by a carrier in pursuance of a contract of sale between the consignor and consignee, the measure of damages is the difference between the contract price and the value of the goods when actually delivered.

3. EVIDENCE—*what prima facie showing of market value.* *Held,* that the evidence of a broker who had made purchases of merchandise like that in question at the place in question and at or about the time in question, was sufficient to show *prima facie* the market value of such merchandise at the time and place involved.

Error to the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed March 26, 1909.

**Statement by the Court.** This writ of error is prosecuted to reverse a judgment of the Municipal

Court of Chicago in an action brought by Euston & Company, defendant in error, against Erie Railroad Company, plaintiff in error, for $485.

It appears from the record that Euston & Company, on February 2, 1906, delivered to the Erie Railroad Company at Chicago, Illinois, one hundred tons of linseed-oil-cake, consigned to Francis Barnard, Bristol, England, and an export bill of lading was issued by plaintiff in error to defendant in error therefor. The shipment was delivered to plaintiff in error pursuant to an arrangement that it should go forward from New York during the month of February.

The following stipulation of facts between the parties was offered in evidence:

"That the lines of the defendant, Erie Railroad Company, extend only from Chicago, Illinois, to New York City, New York; that the 100 tons of linseed-oil-cake were delivered by the plaintiff to defendant at Chicago, Illinois, on February 2nd and February 3rd, 1906, and were carried over the lines of this defendant to New York City, where this shipment arrived February 12th; that the time this shipment was in transit over the lines of defendant was a reasonable time; that immediately on arrival of this shipment at New York City the agents of this defendant notified The Bristol City Steamship line of their arrival, and requested the agents of said Bristol City Steamship line to receive and carry the same to Bristol, England; that said Steamship Company had steamers sailing weekly from New York to Bristol; said shipment, however, did not leave New York until March 16th, although it could have left earlier, on to wit: March 8th, if it had not been for advices received from W. E. Eaton, agent, Chicago, purporting to originate from Euston & Co. to hold the shipment pending reconsigning orders from shippers to another point."

Attached to the stipulation, by agreement, were exact copies of the original bills of lading issued for the 100 tons oil cake, as follows:

"Export Bill of Lading No. 301, Lot No..........
Contract No ...............
ERIE DESPATCH.

In connection with other carriers on the route.

Received at Chicago from Euston & Company, the following property in apparent good order, except as noted (contents and conditions of contents of packages unknown) marked, numbered, consigned and destined as indicated below.

| Consignee and Destination. | Marks and Numbers. | |
|---|---|---|
| Order Euston & Co., Bristol, England. | Brand AE, Lot H. | Four hundred (400) sks linseed oil cake. Shippers' weight 112800. |

Party to be notified,
FRANCIS BARNARD,
Bristol.           (subject to correction.)

To be carried to the port (A) of New York and thence by Bristol City line to the port (B) Bristol, or so near thereto as the steamer may safely get, with liberty to collect at any port or ports in or out of the customary route, and to be there delivered in like good order and condition as above consigned to consignees, assigns or to any other carrier on the route to destination if consigned beyond said port (B) upon payment immediately upon discharge of the property and the freight thereon at the rate from Chicago to Bristol, of 29 and 6/100 cents United States gold currency per 100 lbs., gross weight. * * *

In witness whereof, the Agent signing on behalf of the said Erie Despatch, and of the said Ocean Steamship Company, or Ocean Steamer and her owner, severally and not jointly, hath affirmed to two bills of lading, all of this tenor and date, one of which bills being accomplished, the others to stand void.

Dated at Chicago, this 2nd day of February, 1906.
(Sgd.)    W. E. EATON,
Agent,
On behalf of carriers severally but not jointly.''

The plaintiff in error, defendant below, carried the linseed oil cake with reasonable dispatch to New York City, where it arrived February 12, 1906, and immediately on its arrival notified the Bristol City Steamship Line of the arrival of the shipment and requested the latter company to receive the goods for transportation from New York City to Bristol, England, on one of their steamers leaving New York weekly. The steamship company loaded the shipment on one of its steamers which left the port of New York March 16, 1906, and the goods arrived in Bristol, England, April 6, 1906.

The shipment of one hundred tons of linseed oil cake was sold on or about February 1, 1906, through Francis Barnard, of Bristol, at seven pounds, twelve shillings, six pence per ton cost, freight and insurance for shipment from the sea-board, during February, 1906. The cake not having been shipped as agreed in February, the buyers refused to take it and it was eventually sold in Bristol for six pounds, twelve shillings, six pence cost, freight and insurance just prior to its arrival in Bristol.

The action was brought in the lower court to recover the loss sustained by reason of the failure of the plaintiff in error to perform its contract of shipment.

W. O. JOHNSON and GALE & JOHNSON, for plaintiff in error.

F. G. OFFENLOCK, for defendant in error.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Plaintiff in error contends that the bill of lading issued by it to defendant in error was in effect a contract of carriage from Chicago to New York, and a contract of the Bristol City Steamship Line to carry from the port of New York to Bristol, England, in

other words, that it was two separate contracts. With this contention we cannot agree. The bill of lading cannot be so construed. It is a through bill of lading from Chicago to Bristol, England. The plaintiff in error accepted the consignment for transportation beyond its terminal point, New York City, and became responsible for the transportation of the goods to Bristol, England. Wabash R. R. Co. v. Thomas, 222 Ill. 337; C. & N. W. Ry. Co. v. Simon, 160 id. 648; Anchor Line v. Dater, 68 id. 369; Merchants' Despatch Trans. Co. v. Furthmann, 149 id. 66.

By the stipulation of facts offered in evidence it appears that the oil cakes arrived in New York City on February 12, 1906, and that it "did not leave that point until March 16th following, although it could have left earlier on March 8th if it had not been for advices received from W. E. Eaton, agent, Chicago, purporting to originate from Euston & Co., to hold the shipment pending reconsigning orders from shippers to another point." It also appears by the stipulation that nine days was a reasonable time for the transportation of the shipment from Chicago to New York; and by the testimony of the witness Barnard that a reasonable time from New York to Bristol, England, is from fourteen to eighteen days after the sailing of the steamer. It also appears from the stipulation of facts that the steamship company had weekly sailings from New York to Bristol. From these facts the trial court, to which the cause was submitted without a jury, was warranted in finding that there was unreasonable delay in the transportation of the shipment to its destination.

It is well settled law that for failure of the carrier to deliver merchandise at its destination in a reasonable time, the true measure of damages is the difference between the value of the goods at the time they should have been delivered and the value when they were delivered. S. & M. R. R. Co. v. Henry, 14 Ill. 156; G. & C. U. R. R. v. Rae, 18 id. 488; 3 Sutherland

on Damages, p. 215; Scovill v. Griffith, 12 N. Y. 509; Hackett v. Railroad Co., 35 N. H. 390. If the goods were forwarded by the carrier in pursuance of a contract of sale between the consignor and consignee the measure of damages is the difference between the contract price and the value of the goods when actually delivered. Ill. Cent. R. R. Co. v. McClellan, 54 Ill. 58; Medbury v. N. Y. etc. R. R., 26 Barb. 564; Deming v. Grand T. etc. R. R., 48 N. H. 455.

It is contended, however, that this rule of damages does not apply to the case at bar because it is not shown that the plaintiff had notice of the contract of sale between defendant in error and the consignee at Bristol. But in Ill. Cent. R. R. Co. v. Cobb Christy & Co., 64 Ill. 128, the court answered this contention by saying (page 141):

"The rule undoubtedly is, as between vendor and vendee, or shipper and carrier, that where the article is destined for a special purpose, that fact should be communicated to the vendor or carrier if it is to be made the foundation of special damages against them, and if it is of a character likely to affect the action of the vendor or carrier. Hadley v. Baxendale, 26 E. L. & Eq. 402; Griffin v. Colver, 16 N. Y. 490.

"The fact that this corn was intended for the government was undoubtedly known to the managing officers of the company, and we are not of the opinion that this rule, as expounded in these cases, requires that the shipper should communicate to the carrier the terms of a contract of sale in order to recover the contract price as damages, except so far as there may be some feature in the contract likely to affect the carrier's action."

There was no such feature in the contract of sale between defendant in error and the consignee. We think, therefore, the rule of damages above stated, which was applied in this case by the trial court, was the correct rule.

It is urged that the evidence offered does not show

that the price at which the goods were sold in Bristol was the market price or value there when the goods arrived. In our opinion the testimony of the consignee, who was a broker at Bristol, tends to show the market value of the oil cake when it arrived at Bristol. This witness, Barnard, had purchased, as the record shows, 4,260 tons of oil cake in 1906, and sold the same quantity. His purchases in January of that year were 250 tons; in February 200 tons; in March 100 tons; and in April 200 tons. He was therefore qualified to testify as to the market value of the cake at the time he sold it and at the time it would have arrived in Bristol if it had been shipped as contracted. It appears from the testimony of the witness that there were no regular market reports in Bristol, and that he sold the oil cakes at six pounds, twelve shillings, six pence, cost, freight and insurance, which was "the best price obtainable;" and that if the cake had been "shipped from the sea-board during the month of February, as contracted, it would have realized the price of seven pounds, twelve shillings, six pence, cost, freight and insurance". This, we think, makes a *prima facie* showing of the market price or value of the cake in Bristol, and in the absence of other proof is sufficient, and is proper under the rule. Muller v. Eno, 14 N. Y. 597, 607. In Sutherland on Damages, Vol. 2, page 375, the learned author says: "If the article in question has a market value, that will usually control as the best evidence of its value. If this test has been applied to it by actual sale of it, the fact may be proved as evidence of its value. It is not conclusive, but tends to show its value, and in the absence of other evidence would suffice. Even the amount the goods cost is admissible for the same purpose."

We think the evidence in the record sustains the finding and judgment of the court, and there being no material error in the record, the judgment is affirmed.

*Affirmed.*